Filed March 13, 1885.

———————◆———————

No. 11,613.

METZLER ET AL. *v.* METZLER.

DIVORCE.—*Alimony.*—Where, for the fault of the husband, a divorce is granted to the wife with custody of the only child, the husband's property, beyond all his debts, being worth at least $3,500, alimony in the sum of $1,590 is not excessive.

SAME.—*Parties.*—*Pleading.*—*Fraudulent Conveyance.*—In a suit by a wife for a divorce, making also defendant a stranger, with a view to subject lands conveyed to him to the payment of alimony, the complaint against him is bad on demurrer, if it do not show that the conveyance was made to hinder or defraud, and that it was without adequate consideration.

EVIDENCE.—*Practice.*—A question to a witness, so indefinite that the answer to it may, or may not, disclose matter not pertinent to the issues, may be allowed, or not, in the discretion of the court.

From the Huntington Circuit Court.

*T. R. Marshall* and *W. F. McNagny,* for appellants.

*W. A. Branyan* and *T. G. Smith,* for appellee.

NIBLACK, J.—Suit by Elizabeth Metzler against her husband, William Metzler, for a divorce, in which Joseph Metzler, the father of the said William, was made a co-defendant

to answer as to certain property interests affecting the plaintiff' ¹emand for alimony.

After making the necessary averments as to the residence of the plaintiff, the complaint charged that she and the defendant William Metzler were married in December, 1875, and that they had lived together as husband and wife until early in June, 1882, which was previous to the commencement of this suit; that the said William had failed to make suitable provision for his family for a period of two years previous to their separation; that the said William had also treated the plaintiff in a cruel and inhuman manner in several specified respects, and especially in falsely and wickedly accusing her of the crime of adultery and other lewd conduct, by reason of all which the plaintiff was compelled to separate herself from the said William and live apart from him since early in June, 1882, the time of their separation above named; that during the cohabitation of the plaintiff with the said William, he became and was the holder of the legal title to a house and lot in the city of Huntington, in this State, which had been purchased and improved by the proceeds of their joint labor, of the probable value of $3,500; that on the 26th day of April, 1882, the said William bargained and sold said house and lot to the above named Joseph Metzler, and by falsely representing to her, the plaintiff, that her lewd and improper conduct, and the scandal resulting therefrom, had made it necessary for them to emigrate to the west, and by the violent and threatening use of a revolver in his hands, which placed her under great fear and actual duress, coerced and compelled her to unite with him in a conveyance of said house and lot to the said Joseph, by which she was seemingly made to relinquish her inchoate interest in, and all other rights to, said house and lot; that the said Joseph had full knowledge of the wrongful and coercive conduct of the said William in procuring the plaintiff to execute a conveyance to him, as above stated, and participated therein; that

she joined in the execution of said conveyance against her will and only because she was coerced to do as herein charged; that afterwards the said William ceased to talk of emigrating west, but continued to inflict a tirade of abuse upon the plaintiff and to repeat his charges of adultery against her; that at the time of the plaintiff's separation from the said William he owned particularly described property, real and personal, of the aggregate value of $11,000, including the house and lot conveyed as above to the said Joseph; that the said William and Joseph had been and still were conspiring to cheat and defraud her, the plaintiff, out of her just share and all interest in the property herein above referred to, and that compelling her to sign the deed to the said Joseph was one of the means resorted to for that purpose; that the said William had been since the separation, and was still, selling off his remaining property with a view to secreting the proceeds and defrauding the plaintiff; that in consequence there did not remain property enough, besides the house and lot conveyed to the said Joseph, subject to execution, to satisfy any reasonable sum which might be decreed to the plaintiff for alimony. Wherefore the plaintiff, in addition to a decree for a divorce, demanded judgment in the sum of $5,000 for alimony, and that such judgment should be decreed to be a lien upon the house and lot conveyed to the said Joseph as herein above set forth.

The separate demurrer of Joseph Metzler for want of sufficient facts being first overruled, and issue being joined, the court made a finding that the plaintiff was entitled to a decree of divorce from her said husband William Metzler; that she ought to have the custody of their only child; that the sum of $1,590 should be allowed to her for alimony, and be decreed to be a lien upon the house and lot conveyed to Joseph Metzler, and decreed accordingly.

Questions were reserved upon the evidence as well as upon the amount of alimony allowed to the plaintiff. The evidence

does not impress us as having made a strong case in favor of the plaintiff for a divorce, but there was evidence tending to sustain some of the material allegations of the complaint as against the defendant William Metzler. We can not, therefore, disturb the finding of the court for any supposed insufficiency of the evidence to sustain it. *Graft* v. *Graft*, 76 Ind. 136.

One of the witnesses called by the defendant testified as follows: " I am a sister of the defendant William. He is not a talkative man. I was about their house frequently after he was married."

Counsel for the defendants then said to the witness, "At such times as you were present you may state how the defendant William treated his wife." Counsel for the plaintiff objected to the witness answering that question, and the court sustained their objection, and it is now claimed that the court palpably erred in its decision in that respect.

We think the court, with much propriety, might have permitted the question to be answered, but, strictly speaking, it was too indefinite and uncertain as to the period of time to which the attention of the witness ought to have been directed. All the alleged cruel treatment specifically complained of by the plaintiff, and identified by any witness, occurred within a few months before the separation, and consequently the attention of the witness ought to have been called to the period of time during which serious troubles existed between the plaintiff and her husband. In the absence, therefore, of any distinct statement as to what was proposed to be proven by the witness, we can not hold that the court materially erred in declining to permit the question to be answered. The defendant William Metzler admitted at the trial that he was worth the sum of $3,500 over his indebtedness, and there was evidence tending to show that he was really worth a considerably larger sum. Considering the evidence, therefore, in connection with the fact that the burden

of the care and custody of the child was imposed upon the plaintiff, we would not feel justified in declaring that the amount allowed to her for alimony was excessive.

Third persons may doubtless, for many incidental purposes, be made parties to a suit for a divorce, but to authorize a judgment or decree to be properly entered against any third person thus made a party, a valid cause of action must be alleged as well as established against him, as in other cases. As has been observed, the complaint in this case did not charge that William Metzler caused the conveyance of the house and lot, therein referred to and described, to be made to his father for the purpose of hindering or delaying the collection of any amount the plaintiff might thereafter recover against him for alimony, since there was nothing alleged from which we can infer that a separation was in contemplation by any of the parties at that time. Neither was it charged that the conveyance was made without an adequate consideration.

The only wrongful acts in which the complaint charged Joseph Metzler with having participated were the coercive means used to induce the plaintiff to join in the execution of the deed to him, and entering into and continuing in a conspiracy with his said son William to cheat and defraud her out of her just share and interest in the said William's property, the only specification being his participation in the procurement of the plaintiff to execute the deed above mentioned, which, as we construe the phraseology used, constituted the *gravamen* of all the wrongs in which he had borne any specific part. Nothing was consequently charged which rendered the deed invalid, as between the defendants, when it was executed, and it is now a well settled rule of decision that a valid deed can not be converted into a fraudulent and voidable instrument by any subsequent misconduct of the parties, or either one of them. *Sherman* v. *Hogland*, 54 Ind. 578; *Bishop* v. *State, ex rel.*, 83 Ind. 67; *Barkley* v. *Tapp*, 87 Ind. 25.

Metzler *et al. v.* Metzler.

Conceding the charges made against the defendants as to the manner in which the plaintiff was constrained to sign and acknowledge the deed to the house and lot in the city of Huntington to have been true, as Joseph Metzler's demurrer did, for the purposes then in view, concede them to be, they only made, or tended to make, a proper case for setting aside and cancelling the deed as to her. But that was not the relief sought by the complaint, and, if it had been, it would have been inconsistent with the demand for a divorce, which, if granted, would terminate the plaintiff's inchoate interest in all her husband's real estate.

The claim that the amount of alimony which might be allowed to the plaintiff should be decreed to be a lien upon the house and lot conveyed to Joseph Metzler was, upon the evident theory, that the conveyance had been made to hinder, delay and defraud her in the collection of such alimony, and, for the reasons given, that theory was not supported by the facts averred in the complaint. It follows, therefore, that the separate demurrer of Joseph Metzler to the complaint ought to have been sustained. It is due, perhaps, to Joseph Metzler, as well as to a proper disposition of the cause, to state that, in any event, the finding as against him was not, as we believe, sustained by sufficient evidence, or, indeed, by any evidence tending to compromise him seriously in any way.

So much of the judgment appealed from as decreed the amount of alimony recovered by the plaintiff, against William Metzler, to be a lien upon the real estate conveyed by her and him to Joseph Metzler, is consequently reversed. In all other respects the judgment is affirmed, all at the costs of the appellant William Metzler.

Filed Dec. 9, 1884. Petition for a rehearing overruled March 13, 1885.