ELIZABETH PAIN, Appellant, v. RUFUS PAIN, Respondent.

**St. Louis Court of Appeals, May 21, 1889.**

1. **Husband and Wife:** VALIDITY OF MARRIAGE. If a married woman remarry during the lifetime of her husband, her second marriage is void, although contracted in the belief that her husband is dead, and although the facts were sufficient to warrant a legal presumption of his death. The first marriage could only be annulled by the actual death of one of the contracting parties, or a decree of divorce.

Pain v. Pain.

2. ———. The invalidity of a second marriage under such circumstances cannot be "condoned;" the doctrine of condonation has no application. The second marriage will remain a nullity though the second husband continue to live with the married woman knowing at the time that the first husband is alive.

3. ———: CONDONATION. The knowledge of an offense, which is requisite to a condonation of the offense, must be based on credible information; knowledge of a rumor of the commission of the offense will not suffice.

*Appeal from the Lawrence County Circuit Court.*
HON. M. G. McGREGOR, Judge.

AFFIRMED.

*N. Gibbs,* for the appellant.

(1) A. N. Clark was married and resided in the neighborhood in which appellant was raised and has ever lived in this state. He went from this state more than nine years before his wife married the defendant, and he had never returned to this state nor been heard from. He was presumed to be dead and appellant had a right to act on that presumption. R. S. 1879, sec. 2330; *Hancock, Adm'r, v. Ins. Co.,* 62 Mo. 31; *Lancaster, Adm'r, v. Ins. Co.,* 62 Mo. 141, (121); *Kanz v. Great Council Imp. O. R. M.,* 13 Mo. App. 341; 1 Greenl. Ev., sec. 41; Reeve's Domestic Relations, 206; *McCaffey v. Benson,* 38 La. Ann. 198–200; *Strode v. Strode,* 3 Bush. [Ky.] 228, 229; 1 Stant. Rev. Stat. Ky., p. 380, sec. 9. (2) The cause for a divorce, that the party had a wife or husband living at the time of the marriage, must be considered as applying only to a party presumed to be alive, and the sections 2174 and 2330 harmonize. *Strode v. Strode,* 3 Bush. [Ky.] 228–229; 1 Stant. Rev. Stat. Ky. p. 380, sec. 9. Defendant admits that he lived with plaintiff for a time after he learned that her former husband was alive. That was condonation, or a participation in her guilt, and in either case he is not entitled to a decree. *Nagel v. Nagel,* 12 Mo. 53; *Hoffman v. Hoffman,* 43 Mo. 547.

*Henry Brumback*, for the respondent.

Respondent proved that at the time of his marriage with appellant, and at the time of the trial herein, appellant's former husband, Clark, was living, from whom she had had no legal separation. Upon this proof a decree was properly rendered for respondent upon his cross-bill. "When a marriage has been solemnized between two persons and either party had a wife or husband living at the time of the marriage, the injured party may obtain a divorce." R. S., sec. 2174. While it may be assumed to be a fact that appellant's husband Clark had been unheard of for seven years, and more, still this merely raises a *prima facie* presumption of death, which has no application in the face of the fact that Clark is alive. The second marriage, conceding that it was contracted in good faith in the belief that Clark was dead, is nevertheless void. Clark being still alive, the offense was a continuing one, and there could be no condonation therefor. 2 Bishop on Mar. & Div. [4 Ed.] secs. 43, 64.

BIGGS, J., delivered the opinion of the court.

The plaintiff alleged that she and the defendant were married in October, 1886. For causes of divorce the plaintiff alleged personal abuse and indignities, and that she was driven from home by the defendant and not permitted to return.

The defendant answered, denying the allegations of the plaintiff's petition, except the alleged marriage of the plaintiff and the defendant.

The defendant, by way of cross-bill, asked that the contract of marriage between plaintiff and himself be declared a nullity, and that he be divorced, for the reason that at the date of the marriage he believed that the plaintiff was unmarried, as she represented to him, whereas plaintiff then had a husband living, viz., A. N Clark.

The plaintiff, for replication, averred that on the third day of October, 1875, she was married to one A. N. Clark, in Jasper county, Missouri, and that she continued to live with him as his wife until February, 1877, when he left this state without any known cause, and had never returned, and that he had not been heard of by anyone to plaintiff's knowledge, until after the institution of this suit; that her former husband having been absent for about nine years, the plaintiff, in good faith believing him to be dead, was married to the defendant.

The plaintiff and the defendant went to trial on these issues, which resulted in a decree dismissing the plaintiff's petition and sustaining the cross-bill of the defendant. From this judgment, Mrs. Pain has appealed.

We do not understand that the fact that A. N. Clark was alive at the time of the marriage of the plaintiff and the defendant is seriously controverted or denied. The testimony of his son, and other parties, furnished very satisfactory proof that he was living with one of his sons in the state of Kansas at the date of the trial.

The evidence is also quite satisfactory that A. N. Clark abandoned the plaintiff and his home in Jasper county, Missouri, in 1877, and that, after he left and previous to the institution of this suit, he had not been heard from by any one in the neighborhood where he formerly lived. It is also very clear that the plaintiff married the defendant in good faith, believing her former husband to be dead.

The plaintiff has presented for our determination, two questions: *First.* The validity of the second marriage. *Second.* Whether defendant is entitled to a decree annulling the contract of marriage, if, as a matter of fact, he lived with the plaintiff after he had learned that A. N. Clark was alive.

Vol. 37—8

Counsel for the defendant urged in the trial court, and now insists, that if A. N. Clark deserted plaintiff and left the state in 1877, and had not been heard of by any one where he lived for seven years prior to the plaintiff's marriage to the defendant, then the plaintiff, in marrying defendant, had a right to act on the legal presumption of Clark's death, and, if she married the second time in good faith, believing Clark to be dead, her marriage with defendant was valid.

Another position assumed by the plaintiff's counsel, is to the effect that, if defendant continued to live and cohabit with the plaintiff after he learned that Clark was alive, then the defendant is not entitled to any relief.

The plaintiff's first contention is contrary to the whole doctrine of the Christian marriage. The law is that no length of separation can dissolve the marriage ties. Nothing short of the actual death of one of the contracting parties, or the decree of a court of competent jurisdiction, can sever the marriage relationship. *Glass v. Glass*, 114 Mass. 563; *Williamson v. Parisien*, 1 John Ch. 389; *Spicer v. Spicer*, 16 Abb. Pr. [N. S.] 112; 1 Bish. Mar. & Div., sec. 299; Schouler's Dom. Relations, [3 Ed.] sec. 21.

Under the circumstances of this case, as established by the plaintiff's testimony, her belief in the death of her first husband on account of his continual absence for more than seven years, and her good faith in contracting the second marriage, would shield and protect her from criminal prosecution, but could not give any validity to the second marriage. Schouler, Dom. Rel., etc., *supra*, and authorities cited.

The plaintiff's counsel attempts to apply the doctrine of "condonation" to this case. The idea conveyed in his brief is to the effect, that if the defendant continued, for any length of time, to cohabit with plaintiff, after he learned that A. N. Clark was alive, then,

by so doing, he condoned the plaintiff's conduct, and forfeited his right to have the court declare the marriage a nullity.

We do not think that the law of condonation has any application to such a case as the one under consideration. Mr. Bishop has defined the doctrine of condonation to be, " the remission by one of the contracting parties, of an offense, which he or she knows the other has committed against marriage, on condition of being afterwards treated by the other with *conjugal* kindness." 2 Bishop on Mar. & Div. [6 Ed.] sec. 33. This definition necessarily implies a valid marriage, and a lawful reinstatement of the matrimonial position or *status*. In the case under consideration, a reinstatement or continuance of the marital position, after knowledge that the first husband was alive, would be unlawful, and would render the parties liable to criminal prosecution. Therefore there can be no such thing as condonation in this case. We think that the court, in the interest of society and good morals, should not hesitate under any circumstances to annul such a contract, whenever the facts are made known.

But aside from this, the record fails to show that the defendant had any such credible information that A. N. Clark was alive, previous to the final separation of the plaintiff and the defendant. The defendant's admission on this subject was to the effect that, probably eight or ten days prior to the time defendant left his house, he heard a rumor in the neighborhood, that Clark was living. The "knowledge" of an offense contemplated by the law must be based on information obtained from credible persons having knowledge of the facts. 2 Bish., sec. 39.

The law in this case operates harshly against the plaintiff, but any other ruling would strike at the very foundation of all law governing marriage contracts. The decree of the circuit court will have to be affirmed. All the judges concur.