GRACE F. VIERTEL v. WILLIAM VIERTEL, Appellant.

### Division One, May 30, 1908.

1. **JURISDICTION: Judge Sick: Trial: Appeal and Subsequent Trial.** Where the regular judge was sick, and called another to hold court for him, who tried the case and rendered judgment, which on appeal was reversed, and the cause remanded, the regular judge had jurisdiction to try the case. The judge who first tried it did not retain jurisdiction.

2. **BILL OF EXCEPTIONS: Recitals: Jurisdiction.** A narration or preface in a bill of exceptions on the first appeal, read to the jury at the second trial after a remanding of the case, thus, "The testimony in said bill of exceptions, containing the evidence adduced upon the trial before Hon. Samuel Davis, the judge who presided at the trial of this cause, February, 1906, during the January term, 1906," etc., is no part of the bill of exceptions, neither is another narration to the effect that "the regular judge of this court was sick and on that account was unable to hold the January term, 1906, at which this cause was first tried, and Hon. Samuel Davis, judge of the Fifteenth

Judicial Circuit, by request of the regular judge, held the regular term and tried this among other cases," etc. Such narrations, though found in the bill of exceptions, are not matters of exception, and have no place therein, when exceptions are not saved.

3. **APPEAL: Reversal With Directions: Res Adjudicata: Cross-Bill.** Where the court refused to decree a divorce for plaintiff, and on her appeal the Court of Appeals reversed the judgment, and remanded the cause "with directions to enter up a decree of divorce in favor of plaintiff and to adjudge to her alimony and to fix the amount and to decree the care and custody of the children," there was nothing for the trial court to do but to follow those directions, which were final and *res adjudicata* on all questions involved as to her right to a divorce, and the trial court properly refused to permit defendant to file a cross-bill or to amend his answer.

4. **DIVORCE: Alimony: Support of Children.** Although the wife be awarded alimony in gross and the custody of the minor children, the father is still liable for the support, maintenance and education of the minor children, in the absence of a contrary direction in the decree.

5. ——: ——: **Excessive.** An award of $11,000 in gross as alimony for the wife in her suit for divorce against the husband, who is shown to be worth $30,000 to $35,000, is held not excessive under the circumstances, there being two children awarded to her, and she being about 42 years of age.

Appeal from Cooper Circuit Court.—*Hon. Wm. H. Martin,* Judge.

AFFIRMED.

*John & J. W. Cosgrove* for appellant.

(1) After Judge Davis acquired jurisdiction to try this case, he could not be divested of jurisdiction by the subsequent action of Judge Martin, and, under the repeated rulings of this court, Judge Davis's jurisdiction continued until the final determination of the case. State v. Moberly, 121 Mo. 608; Bank v. Graham, 147 Mo. 250; State v. Davidson, 69 Mo. 509; Rawlins v. Timons, 80 Mo. App. 84; State v. Hayes, 81 Mo. 580, 88 Mo. 334; State v. Sneed, 91 Mo. 556. "The regular judge of the circuit court, on the presen-

tation of the mandate of the Court of Appeals, entered up a judgment of divorce in favor of the plaintiff, and the defendant appealed. This judgment of the circuit court was reversed for the sole reason that it should have been entered by the special judge.'' State ex rel. v. St. L. Ct. of Apps., 99 Mo. 219; Dawson v. Dawson, 29 Mo. App. 521. A divorce suit is a proceeding *in rem*. Gould v. Crow, 57 Mo. 203; McDermott v. Gray, 198 Mo. 285. If error is apparent on the face of the record, it may be raised for the first time on appeal. Fields v. Maloney, 78 Mo. 172; McIntire v. McIntire, 80 Mo. 470. There is no waiver; it was timely to question Judge Martin's jurisdiction for the first time in the motion for new trial. Stansbury v. Stansbury, 118 Mo. App. 427. (2) This court will exercise jurisdiction over the whole case, and the question of divorce is not *res adjudicata*. Gercke v. Gercke, 100 Mo. 240; State ex rel. v. Gill, 107 Mo. 49. (a) The decision of the Court of Appeals is not binding on this court. Paddock v. Railroad, 155 Mo. 534; Hennesy v. Brewing Co., 145 Mo. 115; Sedalia ex rel. v. Donahue, 190 Mo. 407. (b) If this court has jurisdiction over one of several questions involved, its jurisdiction will attach to the whole case. State ex rel. v. Francis, 95 Mo. 48; State ex rel. v. Smith, 177 Mo. 69. (3) It was error for Judge Martin to refuse to permit the filing of defendant's cross-bill and to hear evidence in support thereof. (4) The award of $11,000 alimony in gross is excessive, in view of the fact that the decree does not require plaintiff to educate, support and maintain said children, and does not relieve defendant therefrom. 9 Am. and Eng. Ency. Law (2 Ed.), 871; Lusk v. Lusk, 28 Mo. 94; Chester v. Chester, 17 Mo. App. 659.

*W. F. Johnson* and *W. M. Williams* for respondent.

(1) The Kansas City Court of Appeals had undoubted jurisdiction of the first appeal. This was expressly so decided in State ex rel. v. Gill, 107 Mo. 44. (2) The case having been regularly appealed to the Kansas City Court of Appeals, and that court having appellate jurisdiction thereof, was empowered to render such judgment as, in its opinion upon the record before it, the trial court should have given. R. S. 1899, sec. 866; Land Co. v. Bretz, 125 Mo. 418. (3) The judgment of the Kansas City Court of Appeals reversing that rendered by the trial court and remanding the cause with directions to grant plaintiff a divorce, was a final judgment as to the divorce and is conclusive and binding upon the parties. The Court of Appeals had power either to enter the proper judgment, or remand the cause to the court of original jurisdiction, with directions to that court to make the proper entry. In either case, the judgment is that of the appellate court, and is final and conclusive. The inferior court only carries into execution the judgment rendered by the appellate court. Young v. Thresher, 123 Mo. 312; Smith v. Adams, 130 U. S. 167. (4) The Kansas City Court of Appeals, having jurisdiction and being authorized to direct the judgment that should be given by the circuit court, and the cause having been remanded with specific directions to grant plaintiff a divorce, the trial court was absolutely concluded by the finding of the appellate court, and could do nothing else except follow the mandate of that court. Stump v. Hornbeck, 109 Mo. 272; State ex rel. v. Givan, 75 Mo. 516; Choteau v. Allen, 74 Mo. 56; Shroyer v. Nickell, 67 Mo. 589; Hurck v. Erskine, 50 Mo. 116. (5) The trial court properly refused to permit an amended answer and cross-bill to be filed. State ex rel. v. Edwards, 144 Mo. 467, 3 Cyc. 497. (6) Where

the Court of Appeals remands a case for a new trial, and, upon a second appeal, the case comes within the appellate jurisdiction of this court, the rules of law laid down by the Court of Appeals governing the new trial will not be binding upon this court; but, where the Court of Appeals has jurisdiction and remands a cause with directions to the circuit court to render a particular judgment, this is final and conclusive in all courts. Orvis v. Elliott, 147 Mo. 231; Choteau v. Gibson, 76 Mo. App. 51. (7) Judge Davis, of the Fifteenth Judicial Circuit, was not called at the first trial to hear this particular case. No application for a change of venue from the regular judge was ever made, nor was he disqualified from trying it. The rule as to a special judge, called on account of the disqualification of the regular judge, to sit in a particular case, has no application here. The regular judge was sick, and Judge Davis, at his request, held the entire January term of court, 1905, at which this cause was first tried. The statute provides that the judge called to hold such a term under such circumstances "shall, during the period he shall so act, possess the same powers and be liable to the same responsibilities as the judge of said circuit." R. S. 1899, sec. 1678; Hendricks v. Railroad, 107 Mo. App. 127. (8) The parties appeared before the circuit court of Cooper county, in which the regular judge was presiding. The court had jurisdiction of the subject-matter. No objection was made by defendant to the trial before said judge. The act of the defendant in voluntarily appearing in such court before said judge, and in going to trial without objection, now precludes him from raising the question of jurisdiction. Tracey v. McKinney, 82 Mo. App. 511; Ivy v. Yancey, 129 Mo. 501. (9) Defendant has no cause to complain of the amount allowed as alimony. The plaintiff, a woman wholly destitute of the means of support, was awarded $11,000,

while defendant, an active, vigorous man, will retain about $25,000, after paying the sum awarded to his wife for her support and maintenance. This certainly was not an unreasonable provision for a wife who had worked and labored in the manner shown by this record for fourteen years, and received the treatment accorded her by plaintiff, as set out in the evidence and referred to in the opinion of the Court of Appeals. The decree follows that directed to be given by this court in Gercke v. Gercke, 100 Mo. 237.

LAMM, J.—Born Fiscus, Grace F. (aged twenty-six years) intermarried in 1891 while a school teacher by vocation, with Viertel, a farmer aged thirty years. Fourteen years later, she sued for divorce in the Cooper Circuit Court, charging manifold indignities (setting them forth) rendering her condition intolerable and asking alimony and the custody of two children born of the twain—girls of tender years, Gladys and Mabel. She was cast, *nisi*, on a hearing on the merits. Thereat she appealed in apt time and due order to the Kansas City Court of Appeals (Viertel v. Viertel, 123 Mo. App. 63). There, the judgment was reversed and the cause remanded with directions, witness the following mandate:

"Now at this day come again the parties aforesaid, by their respective attorneys, and the court here now being sufficiently advised of and concerning the premises, doth consider and adjudge that the judgment aforesaid, in form aforesaid, by the said circuit court of Cooper county rendered, be reversed, annulled and for naught held and esteemed, and that the said appellant be restored to all things which she has lost by reason of the said judgment. *It is further considered and adjudged by the court that the said cause be remanded to the said circuit court of Cooper county, with directions to enter up a decree*

*of divorce in favor of plaintiff and to adjudge to her
alimony and to fix the amount and decree the care
and custody of the children as may be right and proper,
in conformity with the opinion of this court herein
delivered,* and that the said appellant recover against
the said respondent costs and charges herein expended,
and have therefor execution.''

When that mandate came down, the cause was
redocketed for disposition in due course. Thereat defendant, to mend holds, tendered an amended answer
making more specific his grounds of defense, and adding thereto a cross-bill of counter-charges to the effect
that plaintiff had offered him such indignities (naming them) as rendered his own condition intolerable
and had absented herself from his home without reasonable cause for a space of one year next before
the filing of the answer and cross-bill; wherefore, he
prayed a divorce with the care and custody of Gladys
and Mabel. On consideration, the trial court was of
opinion that, under the decision and mandate of the
Kansas City Court of Appeals, all questions open at
the time of the first trial were concluded. The effect
of this ruling was to refuse defendant the right to file
his amended answer and cross-bill. The point was
saved by exception. Thereat the cause went to trial
on the theory that only two questions were involved,
viz.: (1) the amount of alimony and (2) the custody
of Gladys and Mabel.

It was agreed that testimony preserved in the bill
of exceptions, made when the cause was taken to the
Court of Appeals, should be read as evidence. Defendant offered it as evidence on the right of a divorce.
The court refused to permit it on that question, but
permitted it on the issues of the custody of the children and the amount of alimony. The point was preserved by exception.

The trial resulted in a decree in favor of the

mother for divorce, with custody of the children (subject to the right of the father to visit them and have them visit him at intervals and times specified in the decree) and for alimony in gross in the sum of $11,000.

In due time defendant filed his motion for a new trial and, the motion being overruled, tendered his affidavit for appeal to this court. Pending the perfecting of that appeal, plaintiff filed her motion for alimony *pendente lite* covering support and maintenance during, and attorney's fees incident to, the appeal. This motion being allowed, it was adjudged that defendant pay plaintiff $75 on the first of every month, beginning December 1, 1907, until the case be finally determined—said payments to be credited on the principal judgment for alimony in gross. Further, that plaintiff recover of defendant $350 for costs, expenses and attorney's fees to be incurred in the prosecution of the appeal and that execution issue for said amounts on failure to pay when due and demanded. Thereupon defendant filed his motion for a new trial directed to the subsidiary judgment and, it being overruled, filed his several affidavits for appeal from the principal as well as the subsidiary judgment. Thereupon an appeal was allowed and the cause comes here for final disposition.

Any facts necessary to a just disposition of the case will appear in connection with the consideration of material questions made. As we see it, those questions appear as alleged errors, in that:

(a) Judge Martin, who tried the case the second time, had no jurisdiction; Judge Davis, who tried it the first time, had jurisdiction.

(b) The judgment of the Kansas City Court of Appeals was not *res judicata* on the question of divorce, is not binding on this court. Our jurisdiction attaches to the whole case including the right to a

divorce. Therefore, there was error, *nisi,* in refusing to file defendant's amended answer and cross-bill and to hear evidence in support thereof.

(c) Looking well to the whole case, plaintiff was not entitled to a divorce on the facts disclosed, for sundry reasons; for instance, the isolated acts of indignity shown did not constitute a course of conduct and hence were insufficient as statutory grounds.

(d) The wife, counter to the husband's wish and protest, kept her mother as a member of the family. The mother-in-law was the disturbing factor in the case—the bitter spring from which all the bad matrimonial water flowed. Hence, the trouble was of plaintiff's own making.

(e) Under the facts here, any and all indignities were condoned by cohabitation.

(f) In view of the fact that the decree does not place upon the mother the burden of educating, supporting and maintaining Gladys and Mabel and does not relieve the father from that burden, the award of alimony is grossly excessive.

Is there soundness in any of the foregoing assignments of error? In our opinion, No. This because:

I. *Of jurisdiction.*

This court will take judicial notice of the fact that William H. Martin is judge of the circuit court of Cooper county. That a circuit court has jurisdiction of a divorce suit involving also the incidents of custody of children and alimony is primer knowledge, and, therefore, unless the record itself shows that Judge Martin lost the jurisdiction once his, there can be no question made on that score. A status of things once shown to exist is presumed to continue till the contrary appears. There is no competent record proof of such loss of jurisdiction. The record shows that without any protest or objection the defendant submitted him-

self to the jurisdiction of Judge Martin. He was willing to take a "sporting chance" in the event—to speculate on the chance of success or failure. When he lost, then, for the first time in his motion for a new trial he raised the point that the trial was an idle ceremony, that the time lost and expenses incurred went for naught because the wrong judge presided. It is not necessary to decide, and we do not decide, that defendant waived or is estopped to make the point. It will do to say, however, that (as the law favors the diligent) it comes late and its lateness invites comment.

If a change of venue was taken from Judge Martin or if he disqualified himself on some statutory ground, an entry in the record proper should show such fact. No such entry being abstracted, the point is based on certain casual narrations in the bill of exceptions, made by the way. Thus, when learned counsel offered the testimony preserved in the first bill of exceptions and it was submitted as evidence at the second trial on the issue of the custody of the children and the amount of alimony, that incident is preserved in the present bill of exceptions, somewhat by way of rhetorical flourish or explanatory preamble, thus:

"The testimony in said bill of exceptions, containing the evidence adduced upon the trial before Hon. Samuel Davis, the judge who presided at the trial of this cause, February, 1906, during the January term, 1906, of the circuit court of Cooper county, Mo., as preserved in the bill of exceptions, upon which the cause was tried in the Kansas City Court of Appeals, is as follows:"

It is on that narration that the theory is predicated that Judge Martin has no jurisdiction. Looking further, however, we find the bill of exceptions contains another narration, viz.:

"The regular judge of this court was sick and on that account was unable to hold the January term,

1906, at which the cause was first tried, and Hon. Samuel Davis, judge of the Fifteenth Judicial Circuit, by request of the regular judge, held said term and tried this among other cases. And when the case was called for this trial no objection was made to the regular judge sitting in the case, and no such objection was made till this motion was filed.''

If, then, the matter first narrated is to be considered as ''record,'' by the same token we must consider as ''record'' the matter last narrated. The two offset each other, and, as estoppel against estoppel setteth the matter at large, so here. The two narrations taken together mean no more than that Judge Davis held Judge Martin's January term, 1906, not as a special judge in any particular case on change of venue, but in the place and instead of the regular judge. He stood in his shoes (if the figure be permissible) as a matter of convenience and courtesy.

The statute provides as follows: ''Sec. 1678. *When Judge of another circuit may sit.*—Whenever the judge of any circuit shall be sick, absent, or from any cause unable to hold any term or part of term of court in any county in his circuit, such term or part of term of such court may, by request of the judge, be held by the judge of any other circuit; and at the request of the judge of any circuit, any term of court or part of term in his circuit may be held by the judge of any other circuit, who shall, during the period he shall so act, possess the same powers and be liable to the same responsibilities as the judge of said circuit.''

It will be seen from that statute that the powers and responsibilities of such borrowed judge are limited to ''during the period he shall so act.'' When he ceases to ''so act,'' the end is at hand. Any other conclusion would result in chaos and confusion breeding hardships abhorrent to the administration of justice; for if jurisdiction of all the cases pending at the January

term, 1906, was transferred to Judge Davis by the mere fact that he presided at that term because of the sickness of Judge Martin, then (barring another change of venue) he would have to preside over the intermediate and final incidents in all such cases at every term —an absurd result not in the mind of the Legislature, and one not necessary to subserve the ends of the statute.

But we need not pursue the matter because neither one narration nor the other is properly a part of the bill of exceptions. A bill of exceptions is what its name indicates, to-wit, a receptacle for matter of exception. The foregoing narrations were not matter of exception and none were saved. The allegations in the motion for a new trial to the effect that the Hon. Samuel Davis had jurisdiction as the only judge competent to sit in the case did not prove itself. Neither is there, as said, competent record here showing the fact.

The point is ruled against defendant.

II. *Of res adjudicata.*

Was the judgment of the Court of Appeals final and conclusive on the merits as to the right of plaintiff to a divorce?

If held conclusive, then according to right reason the following things necessarily result: *First,* the merits of the divorce suit (including the issue of condonation) were not before the court at the second trial; *second,* not being there they are not here—our jurisdiction being only appellate; and, *third,* the trial court did not err in refusing to permit the filing of the amended answer going to the merits and the cross-bill having for its purpose not only the defeat of plaintiff's divorce but defendant's securing one of his own. All these questions are wrapped up in the determination of the conclusiveness of the judgment on the first ap-

peal; hence, need no attention if we determine the point of *res adjudicata* in favor of plaintiff.

Attending. to the main proposition: That the Court of Appeals had jurisdiction to determine the question of divorce cannot be gainsaid. That such jurisdiction conferred power to reverse and remand a case with directions to enter a certain judgment, *nisi*, on a given issue is a commonplace of the law of appellate procedure in Missouri. A direction that does not direct is a misnomer—is palpable nonsense—for it is a precept of the law that it requires no vain or foolish thing to be done, hence when an appellate court reverses and remands a case and directs a certain judgment, *nisi*, its mandate must be strictly pursued. Nothing is left to the judicial discretion of the lower court, which latter acts as a mere amanuensis in that behalf —the judgment directed to be entered being but the judgment of the upper court, entered below, so that when open questions are determined the final judgment becomes a unit, an entirety covering all issues instead of appearing in piecemeal and in different courts. Now, that the Court of Appeals in this case determined the merits of the divorce, is plain on the face of its mandate and is writ large in its opinion. That mandate left no power to retry the case on its merits or permit the amended answer and cross-bill. [Hurck v. Erskine, 50 Mo. 116; Stump v. Hornback, 109 Mo. 272; Young v. Thrasher, 123 Mo. l. c. 311, *et seq.*; State ex rel. v. Edwards, 144 Mo. 467.] In Donnell v. Wright, 199 Mo. l. c. 312, it was·said, in effect, that in awarding a new trial it may be on the whole case, or on a certain issue, or a new trial may be awarded with directions to eliminate pointed-out errors, or to try the case on a certain theory of the law, or with the exclusion or inclusion of certain evidence —the award adjusting itself to meet the ends of justice.

The Court of Appeals had other powers; for example, it had the power to reverse the case and remand it for a new trial *generally*. If it had done so in this case, a different issue would have been tried out below and another question would have been here. It had even the power to commit error, but it would turn things topsy turvy to permit the circuit court, by disobeying its direction, to act upon the theory it had done so. The action of the trial court in this instance was *en regle* and must be commended.

Did the situation change in aught when an appeal was taken to this court from the result of the second trial? Clearly not. This is a court of errors. Its jurisdiction is strictly appellate in this case. May we convict the lower court of error in doing its duty by obeying the direction of the Court of Appeals? To state that question is to answer it.

We hold, then, on the issue of divorce or no divorce, that the judgment of the Court of Appeals was *res adjudicata* as to both the trial court and this court. The point is ruled against defendant.

III. *Of alimony.*

The general rule is: "The allowance of permanent alimony is a matter of sound judicial discretion, to be exercised with reference to established principles and upon a view of all the circumstances of each particular case, such as the estate and ability of the husband, the condition and means of the wife, and the conduct of the parties." [2 Am. and Eng. Ency. Law (2 Ed.), 120.]

It is well enough to notice the compass fetched by counsel themselves on the issue—a compass fetched with a veteran hand and seasoned judgment. For instance, they do not say the alimony is excessive because the husband is without bodily and mental vigor and is handicapped by a lack of earning capacity—such

was not the case; nor do they rely upon the proposition that the wife has such bodily and mental vigor and earning capacity as make the award unjust. True, in her young womanhood she was a school teacher with (presumably) an earning capacity as such; but having borne fruit of her body she has given hostages to fortune, as Lord Bacon puts it; and even a court may assume that the wear of the many daily duties of a wife and mother in the long years since she ceased that vocation, has somewhat lopped off that earning capacity. Counsel do not say that she is rich or that the husband is poor and needy. To the contrary, she is practically without means of her own. She brought to her husband and put into the common chest her modest inheritance and he is shown to possess lands, moneys and bills receivable between $30,000 and $35,000 in value.

They put their point on these propositions, viz.: (1) That the decree has left the burden of maintaining the children upon the father, and (2) the record shows such unhappy conduct on her part as the yokefellow of defendant as makes the reward unconscionable. Of these in order:

(a) Whatever may be the general rule or the doctrine in other jurisdictions [See 9 Am. and Eng. Ency. Law (2 Ed.), 871, and authorities cited in the notes on that page], the rule in Missouri is settled that where a decree of divorce is silent on the subject of the children, the liability of the father to support his minor children remains in full common-law vigor, though their mother is awarded their custody, as here. [Keller v. St. Louis, 152 Mo. 596; Meyers v. Meyers, 91 Mo. App. 151.] This case may proceed, then, on the theory that in the present status of the decree of divorce the common law duty of supporting his children remains with the father. But this view of the case does not, in and of itself, make the alimony exorbitant. If $11,000

be put out at six per cent it would produce $660. If allowance be made for taxes and a possible lower rate of interest, for safe investment, the income would be reduced to, say, $400. An income of $400 is little enough to provide a roof, a fireside blaze, food and raiment for any woman, allowing she may add to it pin money as best she may.

(b) There remains the question of her marital conduct.

We have gone over this long record with an eye to that fact. It tells a miserable story—a story once preserved in the pages of the reports and which need not be spread again of record—the story of a domestic drama acted on the stage of the lives of these two. Its curtain lifted on a scene bright with hope and was rung down on one bitter with ruin and despair. We cannot say the wife was altogether blameless. Much less can we say that the husband was not greatly to blame—he being the head of the house and charged with the duty of ruling with tact, chivalry, justice and sweetness. Both parties often forgot that:

"As one lamp lights another, nor grows less,
    So, nobleness enkindleth nobleness;"

forgot that a soft word turneth away wrath; that it takes two to make a quarrel; that charity, the cardinal virtue, covers a multitude of faults, and that to forgive and forget is the golden rule of marital conduct.

The curious may find the *minutiae* of the misery, misunderstandings, wranglings, quarrels, sarcasms, oaths, the threats and acts of hatred uncovered by the record set forth in the opinion of Judge BROADDUS in Viertel v. Viertel, *supra*. We have compared that opinion with the record and approve the conclusions reached in meting out praise and blame. The sum of the matter was that the wife was entitled to a divorce

because in the eye of the law she was the injured and innocent party.

Considering the needs of the wife, the ability of the husband to pay and the conduct of both parties, we think the award evidences a judicial discretion soundly exercised by the trial judge. It was well within the boundaries prescribed in approved cases. [Hamilton v. Hamilton, 37 Mich. 603; Metzler v. Metzler, 99 Ind. 384; Gercke v. Gercke, 100 Mo. 237.]

Let the judgment be affirmed. It is so ordered.

All concur, except *Valliant, P. J.,* who is absent.