ELIZABETH OSMAK, Appellant, v. AMERICAN CAR AND FOUNDRY COMPANY, WALTER COWELL, LEONARD J. LA FLEUR and EMMETT JOHNSON.—40 S. W. (2d) 714.

Division One, June 24, 1931.

*Bass & Bass* and *John Grossman* for appellant.

*Watts & Gentry* for respondents; *G. A. Orth* of counsel.

RAGLAND, J.—This case comes to the writer for an opinion on reassignment. It is an action to recover the statutory penalty for the death of one John Osmak, alleged to have been caused by the negligence of defendants whilst running a car or train of cars.

.The petition alleged "that on the 16th day of October, A. D. 1922, and prior thereto for many years, she was the lawfully wedded wife of John Osmak, deceased, and as such brings this suit for damages against the defendants; that on or about the 16th day of October, 1922, in the city of St. Louis, State of Missouri, in front of the American Car & Foundry Company, the said deceased husband of plaintiff, John Osmak, deceased, was, as a direct result of the carelessness and negligence of the above-named defendants, as hereinafter set forth, while crossing the railroad tracks at said time and place aforesaid, struck, knocked down, thrown, run over and killed by a box car then and there 'kicked,' moved and propelled by the defendants above named; that said defendants aforesaid were careless and negligent at said time and place aforesaid, in that.: [Here follow the specifications of negligence.]"

A recovery of $10,000 was prayed.

In response to the petition the defendants filed a counter-pleading as follows:

"Come now the defendants in the above-entitled cause and for amended answer and plea in abatement state to the court that this is an action brought by Elizabeth Osmak, claiming to be the widow of John Osmak, who was killed in the yard of the American Car & Foundry Company's plant in the City of St. Louis, on or about the 16th day of October, 1922, and alleging that for many years prior to said date she, the said Elizabeth Osmak, was the lawful wife of the said John Osmak.

"And these defendants respectfully show to the court and allege the fact to be that the said Elizabeth Osmak was never at any time the lawful wife of said John Osmak and is not now and never has been the widow of said John Osmak, but that the said John Osmak on or about the 30th day of June, 1881, was lawfully married in Hungary to one Margareta Rehm, and that said Margareta has ever since been living and is still alive and residing in Hungary, and that the said

John Osmak was never divorced from the said Margareta, but that the lawful relation of man and wife continued to exist between the said John Osmak and his said wife, Margareta, at all times down to and including the date of the death of the said John Osmak. . . .

"Wherefore, these defendants say that the said plaintiff, Elizabeth Osmak, is not entitled to maintain this action, and these defendants respectfully pray the court to first try the issue as to whether or not the said Elizabeth Osmak was the lawful wife and is the widow of the said John Osmak before trying this case on its merits, and pray the court to find and adjudge that the said Elizabeth Osmak, the plaintiff in this case, never was the lawful wife of the said John Osmak, and is not now and never has been his widow, and upon making such finding and judgment to dismiss this cause.

"Further answering, these defendants say that the injuries and death of said Osmak were caused by his own negligence directly contributing thereto in this, to-wit: [Here follow the specifications of such negligence.]"

With the apparent acquiescence of plaintiff, the court granted defendants' request to first try the issue tendered by the so-called plea in abatement. A jury was waived and the issue tried to the court. On that issue defendants admitted:

"They (plaintiff and John Osmak) procured a license regularly issued by the license clerk in the Recorder's Office of the City of St. Louis for the purpose of getting married, and a marriage was solemnized by a justice of the peace in the City Hall in 1919, and that Mrs. Elizabeth Osmak, whose name was then Elizabeth Kuhns, believed that she was entering into a legal marriage and in good faith undertook to enter into such a marriage, and in good faith lived with John Osmak as his wife up to the time of his death."

After making such admission defendants assumed the burden of proving the invalidity of the marriage. For that purpose they introduced two witnesses and read the deposition of a third. The testimony of these witnesses has been reduced with substantial accuracy to narrative form by appellant in her brief. In that form it is as follows:

"TESTIMONY OF KATE HAAG:

"My name is Kate Haag. I live in St. Louis County, some distance out from Clayton. My father's name was John Osmak. My mother's name was Mary Kramer. I was born in Hungary. I came to the United States in 1909. I was sixteen years of age then. My mother and brother came over with me. I resided in Arnestass, Hungary, with my mother, brother and father before I came to this country. My mother and father told me they were never married. (Objected to.) My father came to this country in 1907 and came to St. Louis. I came with my mother and brother to St. Louis in 1909, two years

after my father. I lived from then on with my mother and father, John Osmak, in St. Louis until the death of my mother. My mother died in 1915 in St. Louis. At the time of her death I was married and was not living at home. In the latter part of my mother's life and up to within a few months of her death, I heard conversations with my mother and father on the subject of their relations, and they were not married. (Objected to.) I heard my mother say to my father that he should get a divorce from his wife in the old country so he could marry her, but he said he would not spend the money, because she was out there and he was here. (Objected to.) This was shortly before she died in 1915. I learned afterward that my father was living with Elizabeth Osmak. That is my father (identifying an exhibit in a deposition). The writing on the back is my father's handwriting and was received before I left the old country.

''Cross-Examination.

''I saw my father after 1915 at his home. I lived in St. Louis after 1915 and I saw my father from to time from 1915 to 1919. I got married in 1911. I don't know whether anyone was present when my father made the statement that he did not want to get a divorce on account of the expense. I was standing in the same room when he made the statement. My father lived in St. Louis continuously from the time he came to this country in 1907 until he died.''

''TESTIMONY OF MARGARET OSMAK taken on interrogatories:

''My name is Mrs. John Osmak, *nee* Margareta Rehm. I live in Ciacova, House No. 287, County of Timis, Roumania. I knew John Osmak who died in the city of St. Louis on or about the 16th day of October, 1922. I knew him since 1881. I was married to the said John Osmak. I married him in the Roman Catholic Parish Church in Grabacz (County of Torontal) by the then minister on June 29, 1881. The marriage bans, according to the Roman Catholic rite, were published in the church at Grabacz. I never brought suit for divorce against John Osmak. I was never served with any papers pertaining to any suit for divorce brought by John Osmak. (Objected to.) I never learned from any source that John Osmak had brought suit against me, or had procured a decree of divorce from me in any court. (Objected to.) John Osmak left me in 1905 or 1906. John Osmak left Hungary and came to the United States. There were two children born of my marriage to John Osmak, Peter Osmak who died on July 11, 1923, in St. Louis, and Margareta Osmak now residing in Roumania. I have preserved his photograph which he sent me.''

''TESTIMONY OF JAMES H. LINTON:

"My name is James H. Linton. I am an attorney at law in St. Louis. I have been connected with the claim department of the American Car & Foundry Company as one of its investigators for several years. In connection with the suit of Elizabeth Osmak I went to the office of the Circuit Court in this city (St. Louis) and made a careful examination of the indexes of suits brought between the year beginning in the year 1902 and continuing to and during the suits brought and returnable to the December Term, 1922, of this city (St. Louis). And I made the examination for the purpose of seeing if I could find any record of a suit for divorce brought by John Osmak. I did not find anywhere in the records any record of any suit by John Osmak against Margaret Osmak for divorce in that period of time. I made a similar examination of the records in the courthouse in the Circuit Clerk's office in St. Louis County, at Clayton, covering the same period of time. (Objected to.) I found no such record there. (Objected to.) I looked for any name that resembled Osmak. I looked for everything in the O's that in any way resembled that."

The original marriage certificate referred to by the witness, Margaret Osmak, was introduced.

On the foregoing evidence the trial court found the issue for defendants and entered its judgment dismissing the cause. From such judgment plaintiff prosecutes this appeal.

1. As stated, respondents assumed the burden of proving that the marriage of appellant and John Osmak was invalid. Before taking up for consideration the specific questions raised by appellant, it will not be amiss to recall some of the doctrines of the law relative to the degree of proof necessary for the discharge of such burden.

"As a result of the doctrine that all presumptions are in favor of marriage, the invalidity of a marriage cannot be established like any other question of fact, as every presumption must be overcome by satisfactory proof. The burden of proof is always on the party attacking the validity of the marriage. . . . . The party having the burden of proof must overcome every presumption in favor of the marriage alleged to be invalid, even though this may require the proof of a negative." [19 Am. & Eng. Ency. Law (2 Ed.) 1209.]

"When it is shown that a marriage has been consummated in accordance with the forms of the law, it is to be presumed that no legal impediments existed to their entering into matrimonial relations, and the fact if shown, that either or both of the parties have been previously married, and, of course, at a former time having a wife or husband living, does not destroy the prima-facie legality of the last marriage.

"The natural inference in such case is, that the former marriage has been legally dissolved, and the burden of showing that it had not been rests upon the party seeking to impeach the last marriage. The law does not impose upon every person contracting a second marriage the necessity of preserving the evidence that the former marriage has been dissolved either by death of their former consort or by a decree of court, in order to protect themselves against a bill for a divorce or a prosecution for bigamy." [Harris v. Harris, 8 Ill. App. 1. c. 63.]

"The law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy. Where there is enough to create a foundation for the presumption of marriage, it can be repelled only by the most cogent and satisfactory evidence." [Hynes v. McDermott, 91 N. Y. 1. c. 459, 43 Am. Rep. 677.]

"The presumption of law (the presumption of the validity of a marriage shown) is not lightly to be repelled. It is not to be broken in upon or shaken by a mere balance of probability. The evidence for the purpose of repelling it must be strong, distinct, satisfactory and conclusive." [Morris v. Davies, 5 Clark & F. 163.]

"Where the validity of a second marriage is assailed upon the allegation that one of the parties thereto was a party to an earlier marriage, the presumption is in favor of the validity of the second marriage, and its invalidity cannot be found unless the parties holding the burden of establishing it, complete a chain of evidence which will not only demonstrate the fact and the validity of the earlier marriage and its subsistence at the time of the later marriage, but will aggressively exclude every indication or suggestion which might conceivably rescue the second marriage from invalidity." [In re Salvin's Will, 173 N. Y. Supp. 897.]

See also Johnson v. Railways, 203 Mo. 381, and Nelson v. Jones, 245 Mo. 579.

II. The testimony of the witness Haag to the effect that her father, John Osmak, and her mother, Mary Kramer, had stated in her presence that they were not married, and that he had never been divorced from his wife in the old country, was objected to by appellant at the time of its reception on the ground that it was hearsay, and the point is pressed here. The declarations concerned matters of family history; they were made *ante litem motem;* and the declarants were dead. The statements fall within a well established exception to the hearsay rule and were clearly admissible. [Imboden v. Trust Company, 111 Mo. App. 220.]

Objections were also urged to some portions of the testimony of the witness, Margaret Osmak, but they are, we think, without merit.

III. Appellant next insists that the testimony of the witness Linton that he examined the indexes of the records in the office of the Clerk of the Circuit Court of the City of St. Louis and also those in the office of the Clerk of the Circuit Court of St. Louis County, and was unable to find in either office any record of a suit by John Osmak against Margaret Osmak for divorce, was not the best evidence of the contents of those records and for that reason should have been excluded on her objection. Speaking to a like question in Nelson v. Jones, supra, l. c. 593-4, Judge LAMM said:

"The law requires the best proof the case is susceptible of. . . . Where there is a mass of records to examine, the law does not require the production of certified copies of all of them to prove the negative fact that a certain decree cannot be found. Such proof may rest in parol *ex necessitate rei*. But there should and could have been furnished the testimony of the custodian of those records, or of other persons who *qualified* as familiar with them and all of them, in order that the negative fact might be clearly shown. Mr. Ballard testified he examined certain books and indexes. How did the trial court know they were all of the minute books, record books and indexes? All the trial court knew in that behalf he knew from what Ballard testified. How could a stranger to the records like Ballard *know?*"

The fact that Linton was an attorney, licensed to practice law in this State, and resided in the city of St. Louis, in nowise evidenced a familiarity on his part with the particular records in question. Under the ruling in Nelson v. Jones, supra, it must be held that his testimony did not afford the best proof of which the case is susceptible and for that reason was inadmissible. [See also Norris v. Russell, 5 Cal. 249; Sykes v. Beck, 12 N. D. 242; Fisher v. Betts, 12 N. D. 197.]

Respondents' evidence tends to show that John Osmak was married to Margaret Rehm in 1881 and that Margaret Osmak, *nee* Rehm, was still living in 1919, at the time Osmak married plaintiff. It further tends to show that up to 1915 the former marriage had not been dissolved by divorce; but without the testimony of Linton there is no evidence that Osmak did not procure a divorce from his first wife subsequent to the year 1915 and prior to his marriage to plaintiff in 1919, and the presumption is that he did. It follows that, with Linton's testimony eliminated, respondents did not make a submissible case. This necessitates a reversal of the judgment and a remanding of the cause.

IV. Appellant contends that even if respondents had shown by competent evidence that no suit entitled John Osmak v. Margaret

Osmak appeared on the indexes of the circuit court records of the City of St. Louis (or those of St. Louis County), still their proof would not have been sufficient as a matter of law to overcome the presumption of the validity of Osmak's second marriage. The failure of the indexes of the circuit court records of the City of St. Louis to show the filing of any such suit as proof that Osmak never obtained a divorce from his first wife rests on two presumptions. First, that had he sued for divorce, he would have brought the suit in the city of St. Louis where he resided; and, second, that the clerk of the circuit court would have properly indexed the record of the proceeding. The first grows out of the statutory provision that suits for divorce shall be brought in the county in which the plaintiff resides. But, as has been frequently held, the provision is not jurisdictional in character; it merely prescribes the venue and may be waived. And it is common knowledge that in cases where no contest is anticipated the plaintiff for reasons of his own frequently selects the circuit court of a county other than that of his actual residence as the forum of his action. The second presumption arises from the fact that a statute makes it the duty of the clerk to record the proceedings of the court and make an alphabetical index thereto. Notwithstanding, it not infrequently happens that through inadvertence the record of a proceeding is not indexed. Can evidence, limited in probative value to the strength of the two presumptions just mentioned, be said to be "strong, distinct, satisfactory and conclusive?" Does it, in the language of In re Salvin's Will, supra, "aggressively exclude every indication or suggestion which might conceivably rescue the second marriage from invalidity?"

It is the general rule that, where one has the burden of proving a negative fact, any evidence which creates a fair and reasonable presumption of the negative is sufficient until the contrary is shown. But that rule rests on the assumption that the affirmative fact, if it exists, is peculiarly within the knowledge of the opposite party so that he can easily prove it if necessary to establish his contention. It is without application in cases such as this.

What is said in the preceding paragraphs as to the degree of proof afforded by the evidence, assuming it all to be competent, is intended to be merely suggestive in view of another trial. On such trial there may be other and additional evidence offered, rendering it unnecessary to pass on the present contention of appellant.

V. Under the rules of common law pleading the objection that the plaintiff is not the real party in interest or that his title to the cause of action is defective, if not apparent on the face of the record,

is properly raised by a plea in abatement. Under the code, in such case, it is simply a matter of defense. [Little v. Harrington, 71 Mo. 391, 392.] In the instant case it was necessary for plaintiff to allege and prove, as an element of her cause of action, that she was the "wife of the deceased." To meet this allegation and proof defendants could have offered under a general denial the very same evidence they offered in support of that part of their answer which they denominated a plea in abatement; that was the obvious course for them to have pursued, and the one that was followed in Johnson v. Railways, supra. Where there are several issues the trial court may, in the exercise of a sound discretion, direct separate trials. [Sec. 951. R. S. 1929.] But there was nothing in either the nature or the number of the issues involved in this case to justify separate trials. The press of litigation is such in the Circuit Court of the City of St. Louis, and in this court, that the time of neither should be frittered away through multiple hearings where one will suffice.

The judgment of the circuit is reversed and the cause remanded. All concur.