232 S.W.2d 488 (1950)
CARR
v.
CARR.
No. 41607.
Supreme Court of Missouri, Division No. 1.
September 11, 1950.
Sam J. Corbett and Fred L. Henley, Caruthersville, for appellant.
J. Grant Frye, Cape Girardeau, for respondent.
VAN OSDOL, Commissioner.
Appeal from a decree of divorce granted plaintiff wife, in which decree alimony in gross in the sum of $10,000 was awarded. In the trial court defendant-appellant husband alleged and, upon this appeal, contends *489 the marriage of the parties was void. Defendant-appellant does not deny the marriage was consummated in form according to law, but he asserts the evidence shows plaintiff had a living husband when she and defendant were married. Defendant-appellant also contends the award of alimony was in grossly excessive amount.
Plaintiff-respondent and defendant-appellant were married at Greenwood, Mississippi, August 26, 1929. They came to Caruthersville, Missouri, in 1931. No child was born to the marriage. They were separated April 9, 1948; and this action was instituted June 9, 1948.
Plaintiff had married one Butler at Charleston, Mississippi, February 12, 1924. Plaintiff and Butler lived together in Charleston until along about November 24, 1924, when Butler "went off to a log camp." He went to work "for a company" in South Carolina. Plaintiff testified Butler was killed about March 10, 1925 "a tree fell on him." The first husband's brother notified plaintiff by letter, and later the brother sent plaintiff "a little old trunk" with the first husband's "clothes, shoes, hunting coat and several things." Plaintiff did not hear anything more of her first husband, nor of his brother "after he quit writing." Plaintiff visited Gulf port, Mississippi, in 1947. Defendant testified that, upon her return to Caruthersville, plaintiff told defendant she had seen her "used to be husband." Defendant further testified plaintiff had not told him of her former marriage. Defendant "didn't do anything" about it. Plaintiff denied she had seen Butler since he left for South Carolina, and denied she had stated to defendant that she had seen Butler in Gulfport. She said she had frequently talked with defendant concerning the death of her former husband, before and after her marriage to defendant. One Rhodes, witness for defendant, testified that he had known Butler, and had seen him in 1929 or 1930 and again in 1939.
Defendant, who asserted the invalidity of his marriage to plaintiff, had the burden of proof upon the issue, even though the issue required proof of a negative fact difficult to prove. Osmak v. American Car & Foundry Co., 328 Mo. 159, 40 S.W.2d 714, 77 A.L.R. 722. And where a valid first marriage has been shown, as in the instant case, it may be presumed that, at the time of the second marriage, the first marriage had been dissolved, either by a decree of divorce, or by the death of the former spouse.
"When it is shown that a marriage has been consummated in accordance with the forms of the law, it is to be presumed that no legal impediments existed to their entering into matrimonial relations, and the fact if shown, that either or both of the parties have been previously married, and, of course, at a former time having a wife or husband living, does not destroy the prima facie legality of the last marriage.
"The natural inference in such case is, that the former marriage has been legally dissolved, and the burden of showing that it has not been, rests upon the party seeking to impeach the last marriage. The law does not impose upon every person contracting a second marriage the necessity of preserving the evidence that the former marriage has been dissolved either by death of their former consort or by a decree of court, in order to protect themselves against a bill for a divorce * * *." Harris v. Harris, 8 Ill.App. 57, at page 63. See now Osmak v. American Car & Foundry Co., supra; Nelson v. Jones, 245 Mo. 579, 151 S.W. 80; Jackson v. Phalen, 237 Mo. 142, 140 S.W. 879; Maier v. Brock, 222 Mo. 74, 120 S.W. 1167, 133 Am.St.Rep. 513, 17 Ann. Cas. 673; Klein v. Laudman, 29 Mo. 259; Ribas v. Stone & Webster Engineering Corp., Mo.App., 95 S.W.2d 1221; Woods v. American Coal & Ice Co., Mo.App., 25 S.W.2d 144.
The presumption of the validity of the last marriage may be repelled only by the most cogent and satisfactory evidence. Osmak v. American Car & Foundry Co., supra.
In the instant case the evidence introduced by defendant, tending to negative the death of the first husband prior to the time of plaintiff's second marriage to defendant, consisted of defendant's testimony, denied by plaintiff, that plaintiff had stated *490 she had seen her former husband in 1947, and of the testimony of defendant's witness, Rhodes, that he had seen the former husband in 1929 or 1930 and in 1939. Concerning the testimony of the witness Rhodesof course we do not have the opportunity to observe the demeanor of a witness as did the trial judge who apparently did not give credence to the testimony of the witness Rhodes, but we say that the cold record discloses the circumstances of the asserted meetings of the witness and Butler were vaguely detailed by the witness and that the verity of the testimony of the witness was made more doubtful upon cross-examination. Having examined the evidence relevant to the issue, we agree with the trial court's evident opinion that defendant did not clearly prove Butler was living at the time plaintiff and defendant were married in 1929. The instant case differs from the case of Pain v. Pain, 37 Mo.App. 110, cited by defendant-appellant. In the Pain case the fact that the former husband of the plaintiff was living at the time of plaintiff's marriage to defendant was not seriously contested, and there was very satisfactory proof the former husband was living on the date of the trial of the cause.
Was the award of $10,000 alimony in gross excessive?
Plaintiff is 43 years of age, and defendant is older. There was no direct evidence relating to the health of the parties; but, considering their shown activities, we infer both are in good health.
Prior to the separation, plaintiff worked in the fields, "chopped cotton" in the cotton-chopping seasons; and "all fall" she "weighed cotton, kept it cleaned up around the wagon or truck or whatever we had in the field * * * I was leader in the field." She also performed her regular household duties, prepared the meals, and did the laundry. She did laundry and janitor work for others "all winter and lay by time." She put the money she earned "with his and we would buy lots and when he had to pay off a lumber bill I would help pay that off." Everything was going well until defendant became intimately aware of a neghboring woman. Plaintiff's charges of defendant's adultery, of his cursing and abuse of plaintiff, of his threats upon her life, are all convincingly sustained by the evidence. Defendant has not herein contended the evidence does not support the decree of divorce, nor did defendant allege or undertake to show any misconduct on the part of plaintiff. Plaintiff was indeed the innocent and injured party.
Upon the rendition of a decree of divorce to a wife, the innocent and injured party, the allowance of permanent alimony and the amount thereof are matters within the court's sound discretion to be exercised with reference to established principles and upon a view of all the circumstances of each particular case, such as the estate and ability of the husband, the condition and means of the wife, and the conduct of the parties. Brinker v. Brinker, Mo.Sup., 227 S.W.2d 724; Viertel v. Viertel, 212 Mo. 562, 111 S.W. 579; Gercke v. Gercke, 100 Mo. 237, 13 S.W. 400; Knebel v. Knebel, Mo.App., 189 S.W.2d 464.
In the instant case the evidence shows the parties had worked hard and were thrifty. They have accumulated parcels of real property upon which five residence buildings have been erected. These lands are of total value about $14,500. The title to one parcel of property, their home, worth about $4,000, was vested in them by the entirety. The title to the remaining tracts, rental properties, is vested in defendant husband; two of these tracts are subject to liens totaling $968. The parties have acquired personaltyfarming equipment; and household furniture, china, linens, silverware, radio, electric refrigerator, a grand piano, of substantial value in the aggregate, all of which personalty remained in the possession of the husband at the time of the separation. Had it not been for the defendant's misconduct and breach of the marriage contract, the marital venture would, no doubt, have successfully continued to the parties' mutual enjoyment of the rewards of their joint labor and thrift. The trial court considered the property status of the parties and plaintiff's declaration that she would not claim any rights in the property and her discharge of defendant of all claims on account of *491 the marriage status or on account of the parties' property interests, "except the interest she has as tenant in common with defendant of lands heretofore held by them as tenants by the entireties."
Giving consideration to all of the relevant circumstances, it seems to us the trial court's allowance of alimony in gross is excessive.
Assuming the value of the personalty to be $2,500, the property accumulated by the parties during their nineteen years of marriage is of about $16,000 clear value, and deducting $2,000 [the approximate value of plaintiff's undivided moiety as tenant in common (after divorce) with defendant of the residence property], and also deducting the award of $10,000 alimony, defendant would have resources remaining of but approximately $4,000 in value. The record further shows that, in this litigation, defendant has been heretofore subjected to judgments for attorney fees and suit money in total amount $570; and additionally for a stated amount of $100, and for $20 per week alimony pending the litigation. We have kept in mind that plaintiff by her efforts and thrift has greatly contributed to the parties' success in the accumulation of the properties mentioned. It is apparent that defendant does not have the ability to pay these various judgments and costs without practically exhausting the remaining resources. Even considering the serious marital misconduct of defendant and the innocence of plaintiff, it would not be our purpose to act upon these facts alone and so penalize defendant as to possibly destroy his useful incentives. We must consider all the shown circumstances. It is true that $10,000 or a lesser sum any not yield an income sufficient to support plaintiff, yet it is contemplated that plaintiff, who, we have inferred, is well and able to work, will continue to earn her own livelihood, at least to the extent of her ability so to do. And, as stated, plaintiff has an interest of approximately $2,000 value in the residence property.
It is our opinion that an award of $6,000 alimony in gross would be more reasonable in the circumstances. Compare Viertel v. Viertel, supra; Gercke v. Gercke, supra; Howard v. Howard, 188 Mo.App. 564, 176 S.W. 483.
The trial court's decree should be modified to allow plaintiff $6,000 alimony in gross, and the execution on the judgment should be stayed pending plaintiff's release of claim to the personalty and her relinquishment of her inchoate dower interest in the described realty the title to which is vested in defendant. The decree should be otherwise affirmed.
It is so ordered.
LOZIER, and ASCHEMEYER, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur, except HOLLINGSWORTH, J., not voting because not a member of the Court when the cause was submitted.