## MARY A. JACKSON et al. v. RICHARD PHALEN et al., Appellants.

### Division Two, November 14, 1911.

1. **APPEAL: Equitable Proceeding: Reviewing Evidence.** Considering this case in the nature of an equitable proceeding under the reply praying affirmative equitable relief, it becomes the duty of the Supreme Court to review the evidence.

2. **PRESUMPTIONS: Second Marriage.** The evidence shows that the same person had been married twice, each marriage according to legal formalities, and an interval of ten years intervening between the first and second marriage. Nothing else appearing, the law presumes there were no legal obstacles to the second marriage and that it made the parties husband and wife. In support of this presumption, the law infers, in the absence of contrary evidence, that the first marriage was dissolved by death or divorce. This is a favored presumption of the law, and can be overcome only by clear and cogent evidence.

3. ————: **Immoral Relations: Later Marriage.** The presumption of immoral relations does not arise where those relations have been rectified by a later marriage.

4. **EVIDENCE: Burden of Proof: Suit to Quiet Title.** The burden of establishing no divorce and that a woman's first husband was alive at the date of her second marriage, rests upon the defendants in this suit to quiet title wherein they deny the legal validity of this second marriage, the validity of which is essential to plaintiff's title. That burden is not discharged by such testimony as the defendants introduced in this suit.

5. PRESUMPTIONS: Illegitimacy: Evidence to Overcome. The law presumes legitimacy, not bastardy, with the same force with which it infers that a marriage when once shown to have taken place with legal formality can be shown to be invalid only by strong and persuasive evidence, leaving no room for reasonable doubt in the mind of the chancellor. The evidence of defendants in this case is reviewed and held insufficient to overcome this presumption. .

Appeal from Iron Circuit Court.—*Hon. Joseph J. Williams*, Judge.

AFFIRMED.

*George Safford* for appellants.

(1)   When, in an action at law, equitable questions are interposed, the entire case is thereby converted into a suit in equity, and will be so regarded, both in the trial court and on appeal.   Durfee v. Moran, 57 Mo. 375; Saving Inst. v. Collonious, 63 Mo. 295; Allen v. Logan, 96 Mo. 597; McCullum v. Boughton, 132 Mo. 621; Swon v. Stevens, 143 Mo. 392; Lewis v. Rhodes, 150 Mo. 501; Ridgeway v. Herbert, 150 Mo. 612.   (2)   While it is true that in equity cases where the evidence consists wholly or almost entirely of parol evidence, the Supreme Court will defer somewhat to the finding of the chancellor, no such rule obtains in cases in which the evidence consists of records, writings, or depositions.   Allen v. Logan, 96 Mo. 598; Lovitt v. Russell, 138 Mo. 481; Swon v. Stevens, 143 Mo. 396.   (3)   The relation arising from a lawful marriage between competent parties is presumed to continue until substantial evidence is offered tending to show that such relation has been terminated, either by the actual or presumed death of one of the contracting parties or by divorce.   5 Cyc. 700; State v. Melton, 120 N. C. 591; Whalen v. State, 12 O. Cir. Ct. 584; Clark v. Cassidy, 62 Ga. 408; Eriskine v. Davis, 25 Ill. 251; Ellis v. Ellis, 58 Iowa, 720; Cruize

v. Billmire, 69 Iowa, 397. (4) An honest and reasonable belief on the part of the contracting parties that Brainard was then dead would relieve the transaction of its criminal aspect, but leave the second marriage void. State v. Stank, 9 Ohio Dec. 8; Reg. v. Tolson, 23 Q. B. D. 168; Reg. v. Moore, 13 Cox C. C. 544; Reg. v. Horton, 11 Cox C. C. 670; Reg. v. Turner, 9 Cox C. C. 145; People v. Mayer, 8 N. Y. St. 256; Reynolds v. United States, 98 U. S. 145. (5) Where the relation between a man and woman cohabiting is shown in the first instance to have been meretricious, the presumption arises that their relation has continued to be of such character. 22 Am. and Eng. Ency. Law, 1240; Turton, 3 Hag. Ecc. 350; Carotti v. State, 42 Miss. 334; Cargile v. Wood, 63 Mo. 501; Smith v. Smith, 4 Paige, 432; Imboden v. Trust Co., 111 Mo. App. 235.

*N. A. Mozley* and *Ralph Wammack* for respondents.

(1) Where a legal marriage is shown and that subsequently one of the parties to the marriage intermarried with another, the presumption of law is, that the former partner is dead or that the former marriage was dissolved by divorce, and the burden is on the party asserting the illegality of the subsequent marriage to show that the party to the former marriage was alive at the date of the subsequent marriage, and if alive that there was no divorce, and this, even though it requires the proof of a negative. In such case the presumption of innocence is stronger than the presumption that a legal marriage relation once entered into is presumed to continue. There is a very strong presumption in favor of the legality of a marriage regularly solemnized. Rather than hold a second marriage invalid, and that the parties have committed a crime or been guilty of immorality, the courts have often indulged in the presumption of death in less than seven

years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce. A more correct statement, perhaps, would be that the burden is cast upon the party asserting guilt or immorality to prove the negative— that the first marriage had not ended before the second marriage. Maier v. Brock, 222 Mo. 74; Johnson v. Railroad, 203 Mo. 381; Klein v. Laudman, 29 Mo. 259; Hunter v. Hunter, 111 Cal. 261; Schuchart v. Schuchart, 61 Kan. 597; Boulden v. McIntire, 119 Ind. 574; Johnson v. Johnson, 114 Ill. 617. (2) When a marriage has been regularly solemnized, the contract of marriage, the capacity of the parties, and in fact everything necessary to the validity of the marriage, in the absence of proof to the contrary will be presumed to be valid until the contrary is shown. Megginson v. Megginson, 14 L. R. A. 540; Cartwright v. McGowan, 121 Ill. 388; Thomas v. Thomas, 124 Pa. St. 646; Ward v. Dulaney, 23 Miss. 410. (3) To stigmatize a mother and to deprive a child of its birthright are matters of the gravest importance and should not be done, except upon clear and unequivocal testimony of such force as to leave no reasonable doubt. Kraus v. Kraus, 98 Mo. App. 427. (4) The law presumes legitimacy and not illegitimacy. After a lapse of many years and when the parties are dead, legitimacy will be presumed on very slight proof. Johnson v. Johnson 30 Mo. 81.

BOND, C.—This action is to quiet title to certain lands which belonged to Joseph C. Howell at the date of his death. The plaintiffs are the subvendees of Sobrina Howell, who elected as the widow of Joseph C. Howell to take one-half of his estate in lieu of dower. At the time of the death of Joseph C. Howell he also left surviving him a little boy, Howard Russell Howell, whom he and said Sobrina Howell had reared and treated as their child, and asserted that he was born

237 Sup.—10

about two years after a marriage ceremony between them. After the death of Joseph C. Howell, this child died leaving no issue, and the said Sobrina Howell claimed the balance of said lands as the heir of said boy. She sold the lands to plaintiff. She also administered on the private estate of said Joseph C. Howell, and received from one of the defendants, Thomas Howell, as administrator of the estate of a partnership between himself and said Joseph C. Howell, the balance due on final settlement of the partnership estate.

The defendants are Thomas Howell, the brother and partner of Joseph C. Howell, deceased, and his children, and one Phalen, to whom said Thomas Howell gave a deed to certain of the lands; whereupon plaintiffs filed this suit against said Phalen as defendant. The said Thomas Howell and his children were subsequently made co-defendants.

The answer of the defendants avers that Sobrina Howell was not the legal wife of Joseph C. Howell, and that the boy, Howard Russell Howell, was neither their offspring nor adopted by them, and that plaintiffs acquired no title as grantees of Sobrina Howell; that defendants are the next of kin and sole heirs of Joseph C. Howell, whose title to said lands was cast upon them by descent.

A reply was filed containing a general denial and alleged also matters of estoppel, and prayed affirmative equitable relief. A demurrer to the reply being overruled, the cause was submitted to the court without a jury.

On the trial the following facts were undisputed: A certificate of the marriage of Wm. Brainard and Sobrina Russell on the 29th of November, 1865, in Benton county, Missouri; a certificate of the marriage of Joseph C. Howell and Sobrina Brainard on the 26th of October, 1875, at Kansas City, Missouri; a certificate of the election in writing on the 29th of March, 1888, of Sobrina Howell as the widow of Joseph C.

Howell, deceased, and mother of his son, Howard Russell Howell, then living, to take a child's part of the lands of said Joseph C. Howell; her application on the 5th of January, 1887, for letters of administration on the private estate of said Joseph C. Howell, stating, under oath, that she was his widow, and, together with said Howard Russell Howell, was his heir; that letters of administration as prayed were granted to said Sobrina Howell; that two allowances, $200 and $300, respectively, were made to her as widow by the probate court on February 3, 1887, and on the 26th of April, 1887; that said Sobrina Howell as guardian of said Howard Russell Howell suggested his death on the 28th of January, 1889, and was ordered to make distribution of his estate; that defendant Thomas Howell, surviving partner of J. C. Howell, as administrator of the partnership estate paid over certain of said assets to Sobrina Howell, as shown in his final settlement on the 25th of November, 1889; that deeds covering all the lands claimed by Sobrina Howell were made, first, of the half belonging to her as widow; and, second, of the remaining half coming to her as the mother of Howard Russell Howell upon his death; that by subsequent deeds all of said lands were conveyed to plaintiffs; that Howard Russell Howell died without issue before Sobrina Howell, and that she subsequently died; that J. C. Howell was the common source of the titles claimed by the respective parties to this suit; that the defendants are Thomas Howell, the brother, and other collateral kindred of Joseph C. Howell, and the grantees of defendant Thomas Howell; that unless the widow and child, recognized as such by Joseph C. Howell at his death, bore relations to him, then he died without direct descendants. As to this question, the plaintiffs adduced other evidence than that heretofore stated, which tended to prove that after Joseph C. Howell moved to Cape Girardeau and Stoddard counties and up to his death

in December, 1886, he at all times and in every manner acknowledged Sobrina Howell to be his wife, and the boy, Howard Russell Howell, to be his child by her as his wife; that he showed great affection for said child, and, when dying, besought his brother, Thomas Howell, who was his partner in the stave business, to do the right thing by his wife and child in "straightening up the business," which defendant Thomas Howell promised to do; that the witness who gave this testimony further stated defendant Thomas Howell called on her and sought to prevent her from so testifying; that on the 26th of June, 1891, in a suit of Thomas Howell v. H. H. Bedford, it was alleged in the petition "that the said J. C. Howell departed this life December, 1886, and left as his only heirs at law his widow, the said Sobrina Howell, and his only child, Howard Russell Howell . . . . "That on or about the 1st day of January, 1889, Howard Russell Howell, the said minor child of J. C. Howell, deceased, departed this life, leaving as his only heir at law his mother, the said Sobrina Howell." That during the five or six years the said Joseph C. Howell lived in southeast Missouri, he caused Sobrina Howell to join as his wife in many conveyances of real estate made by him, and in every way recognized her as his wife.

Defendants introduced evidence tending to show that prior to the marriage ceremony between Joseph C. Howell and Sobrina Brainard they had lived together as man and wife in Kansas City, Missouri, that Brainard, the former husband of Sobrina, was aware of this, and after some arrangement resulting in a payment of money to him, left Kansas City in 1871; that about four or five years after his departure, the marriage ceremony between Joseph C. Howell and Sobrina Brainard took place; that about two years after that ceremony the child, Howard Russell Howell appeared and was seen when apparently about a week old by acquaintances of the parties; that some of them

asked Mrs. Sobrina Howell about the child, and she merely laughed, and to one person she said that she had found it in the barnyard; that certain other persons living in Kansas City asked Mr. Howell about the child; that generally he made no reply, but to one of them he said that it was not his child, that he intended to adopt it; that the boy had red hair and a freckled face, while Joseph C. Howell and Sobrina Howell had dark colorings; that when Joseph C. Howell was asked about this, he said "it raced back several generations;" that a man named William Brainard stopped three times in 1890 and 1891 at the corral of a horse dealer, having a different woman with him on each occasion, and in one of them engaged in a fight upon the charge that he had another man's wife with him. It was not shown that this William Brainard was the man who married Sobrina Russell in 1865.

Plaintiffs introduced evidence that Mrs. Sobrina Howell stated to a witness in Cape Girardeau in referring to the birth of this child, that she had nearly lost her life at the time; and evidence showing further that during the time Joseph C. Howell and Sobrina resided in Southeast Missouri they universally claimed this boy to be their child and showed the greatest care and affection for the boy.

## OPINION.

I. Considering this case in the nature of an equitable proceeding under the reply praying affirmative equitable relief, it becomes our duty to review the evidence.

The two questions to be decided are, first, whether Sobrina Howell and the boy, Howard Russell Howell, were the wife and child, respectively, of Joseph C. Howell at the time of his death in December, 1886; second, if not, whether the defendants are precluded by their conduct or by laches from a recovery against the plaintiffs.

We will discuss these questions in the order named. The two marriages of Sobrina Howell—each according to the legal formalities—were celebrated, one in 1865 and the other in 1875, or at an interval of ten years. Nothing else appearing, the law in the interest of society presumes there were no legal obstacles to the second marriage, and that it made the parties thereto husband and wife. In support of this presumption, the law infers, in the absence of contrary evidence, that the first marriage was dissolved by death or divorce. [Maier v. Brock, 222 Mo. 74; Johnson v. Railroad, 203 Mo. 381–403; Klein v. Laudman, 29 Mo. 259; Revised Statutes 1909, sec. 341; Cartwright v. McGown, 121 Ill. 388; Thomas v. Thomas, 124 Pa. St. 646; Megginson v. Megginson, 14 L. R. A. 540; Orthwein v. Thomas, 127 Ill. 554; Kraus v. Kraus, 98 Mo. App. 427.]

This is a favored presumption of the law, and can only be overcome by clear and cogent evidence. [State v. Jenkins, 139 Mo. 535; State v. Cooper, 103 Mo. 266; State v. Hansbrough, 181 Mo. 348; State v. Gonce, 79 Mo. 600.]

The presumption of the continuance of immoral relations does not arise where they have been rectified by a later marriage. [Imboden v. Trust Co., 111 Mo. App. 235.]

Now, there was not a shadow of testimony in this case that William Brainard did not procure a divorce from the wife whose misconduct he knew of when he abandoned her, about four years before her subsequent marriage. He knew of her frailty in 1870 or 1871, and left her at that time, and, according to rumor, after a moneyed settlement. From that date until Howell's death in 1886, the Brainard who married in 1865 was not identified as being alive nor having reappeared. The only allusion to a man of that name was the testimony of the horse dealer, that his book showed that a person of that name rented a place for his wagon and horses in his yards in 1890 or 1891

in company with a different woman at each time. This witness did not pretend in any way to know that this person was the former husband of Sobrina Howell.

The burden of establishing no divorce and that the first husband was alive at the date of the subsequent marriage rested upon defendants. This was not discharged under the facts stated in the record. We, therefore, hold that the presumption of the legal validity of the second marriage was not overthrown by the clear, cogent and satisfactory evidence required by law.

II. The next point is, whether or not Howard Russell Howell according to the preponderance of the evidence was the child of Joseph C. Howell and his wife, Sobrina. . For several years following their marriage those parties lived in Kansas City. Subsequently they moved to Cape Girardeau, Missouri. During their residence in Kansas City, and about eighteen months after the marriage ceremony, the boy, Howard Russell Howell, was seen as one of the family by persons who visited them. The apparent parents were questioned about the dissimilarity between their own hair and complexion and the light-haired, freckle-faced baby. These were generally dismissed with a laugh, though in one instance Mrs. Howell stated that she had found the child in the barnyard, and at another time her husband stated that it was not his but he intended to adopt it.

This testimony as to what happened in Kansas City rests upon the statements of witnesses about twenty-five years after the conversations were had.

On the other hand, the plaintiffs showed that Howell and his wife and the child lived in Cape Girardeau and Stoddard counties for five or six years before his death; that the acts and conduct of the husband and wife never at any time during that period

gave rise to any suspicion either by inference or implication that the child was not their own; that in one instance the mother spoke of her painful travail at the time of its birth. But no witness testified that any suspicion or thought was entertained in the community where they lived in southeast Missouri that this boy was not the child of its ostensible parents. Indeed, the defendant Thomas Howell, who was a partner in the stave business with his deceased brother, was so thoroughly impressed with the fact that his brother was the husband of Sobrina and the father of the child claimed by them, that as late as 1891, six years after his brother's death, he affirmed such to be a fact in a petition filed by him. There was also evidence that he had attempted to suppress testimony of a witness who stated that he was told by his brother on his death-bed to take care of the interests of his wife and child in "straightening out their partnership," and he promised so to do.

The defendants by their answer in this case have pleaded affirmatively "that Howard Russell Howell was not the child of Joseph C. Howell born in lawful wedlock." They thus assume the burden cast upon them by law of proving illegitimacy. The law presumes legitimacy, not bastardy, with the same force with which it infers that a marriage when once shown to have taken place in accordance with the ceremony prescribed by law can only be shown to be invalid by strong and persuasive evidence, leaving no room for reasonable doubt in the mind of the chancellor. [Maier v. Brock, supra, l. c. 100, and cases cited.]

Under these pleadings and the evidence in the record, the defendants have not sustained the burden of proof assumed in their amended answer of establishing by a preponderance of the evidence either the invalidity of the marriage in due form between Joseph C. Howell and Sobrina Brainard in 1875, or the illegitimacy of the child.

It results from this conclusion that the defendants have shown no title whatever to the real estate of Joseph C. Howell, which descended at his death to his wife and child and by the conveyances of the surviving mother was subsequently vested in plaintiffs. This renders it unnecessary to discuss the question of estoppel. For these reasons the judgment herein is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of BOND, C., is hereby adopted as the opinion of the court.

*George Safford* for appellants.

*N. A. Mozley* and *Ralph Wammack* for respondents.