R. W. CUNNINGHAM AND MRS. R. W. CUNNINGHAM, RESPONDENTS, v. MANAGEMENT & ENGINEERING CORPORATION, AND THE FIDELITY & CASUALTY COMPANY, APPELLANT.—45 S. W. (2d) 899.

Springfield Court of Appeals. February 4, 1932.

*George A. Hodgman* for appellants.

216

*Phil M. Donnelly,* for respondents.

BAILEY, J.—This is an appeal from a judgment of the Circuit Court of Pulaski County, affirming a final award of the Missouri Workmen's Compensation Commission in favor of the surviving parents of a minor son, Raymond Cunningham. The original hearing was before Hon. Orin H. Shaw, a member of the Missouri Workmen's Compensation Commission, who made an award allowing $150 for burial expenses and as death benefits awarded to Mr. and Mrs. R. W. Cunningham, parents, the sum of $15 per week for 200 weeks. On review before the whole commission, the award of the commission was modified after finding the employee's wages to be $21 per week. The father was awarded $6 per week for 175 weeks and the mother was also awarded $6 per week for 175 weeks.

Appellants state the circuit court erred in entering judgment sustaining the award of the commission because the facts found by the commission do not support the award and the commission, under the record, had no legal authority to make an award. This assignment raises the question as to whether or not, under the evidence most favorable to respondents, the award and judgment should be sustained. In other words, the award of the commission occupies the same impregnable position as does the verdict of a jury and must be upheld if there be any competent evidence upon which it may be supported. [Sec. 3542, R. S. 1929; Hager v. Pulitzer, 17 S. W. (2d) 578; Cotter v. Valentine Coal Co., 14 S. W. (2d) 66; Travelers Ins. Co. v. Davis et al., 42 S. W. (2d) 945.] We are therefore barred from weighing the evidence, but must give these claimants the benefit of all the evidence as well as such favorable inferences as may be deduced from the facts.

There is no dispute in regard to the employment of deceased, Raymond Cunningham, nor as to the facts relating to the accident. The fatal injury occurred on June 8, 1929, while deceased was employed, along with other men, in constructing a high line across Pulaski County. The employer was the Management and Engineering Corporation, and the insurer was The Fidelity and Casualty Company, of New York, both appellants here. Plaintiffs are the father and mother, respectively, of Raymond. The sole issue in the case is whether or not plaintiffs adduced sufficient evidence as to their dependence to support the award.

The material facts are about as follows: Plaintiffs owned and lived upon a farm of 160 acres. This farm was mortgaged for $5000 at the time of the death of Raymond. The family, living at home, consisted of the plaintiffs, another son age thirteen and a daughter twenty-four. Raymond, the employee, had gone to high school, one year in the town of Conway and three years in Phillipsburg, from which latter school he graduated in May, 1929. One week later he began working for the Management and Engineering Corporation and

continued to work for about three weeks, when he was killed, as stated, on June 8, 1929, at the age of nineteen. He never lived to draw a pay check, but checks given for his work were cashed by plaintiffs after his death. During the time Raymond attended school he lived at home, paid no board and drove back and forth from the farm to the school each day. During the summer vacation and after school he worked continuously on the farm for his father. He had never had any income or regular job prior to his employment by defendant and, other than his labor on the farm, and money derived from an odd job he occasionally procured, he contributed nothing to the support of the family. At the time he went to work for defendant he had promised and agreed to turn over to plaintiffs all the money he earned over and above what might be required for his own support. But, as heretofore indicated, he never lived to fulfill that promise. He was rooming and boarding with an older brother, at the time of his death, and at a place near the home of his parents, which board and room was to cost him about $7 per week. During the short period he had worked he had visited his parents' home after work hours and had left most of his clothes there.

The last year he went to school his expenses, paid by his parents, were about $250. The mother testified he was to pay back what they had been ''out'' on him. The father's health is not good and he was fifty years of age, the mother fifty-one, at the time of the hearing.

The foregoing constitutes substantially all the evidence bearing on the question of dependency. The statute provides that the word ''dependent'' as used in the Workmen's Compensation Act shall be construed to mean ''a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon his wages at the time of his injury.'' [Sec. 3319 (d), R. S. 1929.] It is further provided that ''questions of total or partial dependency shall be determined in accordance with the facts at the time of the injury.'' [Sec. 3319d2, supra.]

Commissioner Shaw, in the original hearing of this case, found that under the evidence the employee showed an intent to send part of his wages to his parents. He further ruled that as to whether this intent, without actual contribution, would constitute dependency was a question of law; and that under the law the father and mother were partial dependents. The finding was approved by the entire commission and, on appeal, by the circuit court.

The question seems to be one of first impression in this State. We must be guided by a broad interpretation of the statute to the end that the public welfare may best be served, but under no circumstances may we, by judicial construction, read into the statute something beyond its reasonable and unequivocal purview.

It is apparent from a reading of the commission's finding in this case that, during the period the son Raymond Cunningham was at-

tending school, the plaintiffs, his parents, were not dependent upon him for their support. No other reasonable conclusion could be reached from the facts. His last year in school had cost plaintiffs $250 which they expected him to repay. It is true he worked for his father on the farm after school and during the summer months. There is no evidence as to the amount or value of such work; there is no evidence as to the cost of his maintenance, consisting of room and board. While the cost of the maintenance of a contributing son should not be considered in determining the amount of compensation to which the defendant parents may be entitled (Clingan v. Carthage Ice & Cold Storage Co., 25 S. W. (2d) 1084), yet we think it might be considered in determining the fact of dependency itself. [Dembrinski's Case, 231 Mass. 261, 120 N. E. 856.]

Defendants take the position that these plaintiffs, while supporting and undertaking to give their son Raymond an education and contributing considerable sums on that account, could not have been dependent upon him for support. It is clear he was helping all he could but, in so far as the evidence shows, not in excess of plaintiffs' contributions to him. If dependency depends on contributions prior to the death of the employee, the argument of defendants must prevail, because there was no evidence of dependency prior to the time the son became an employee of defendant.

We then come to the question as to whether a promise by a minor son to contribute to the support of his parents, in straightened circumstances, unfulfilled because of the untimely death of the son and employee before his first pay day, is sufficient under our statute to constitute dependency, there being no proof of any prior dependency. The finding of the commission, ruling in favor of dependency and awarding compensation, is based largely upon two cases, i. e., Gregory v. Standard Oil Co. of Louisiana, 91 So. 717, and Freeman's Case (Mass.), 123 N. E. 845. In the Gregory case the minor son had been making a hand on the farm. The Supreme Court of Louisiana held that, "it is not necessary that the plaintiffs should have been actually receiving from their son, contribution or pecuniary aid at the time of his death; that the son being a minor, that he had previously contributed his labor in making a crop which went to their support; and when he left to seek employment, promising his parents to send a stated amount of his monthly wages to employ a hand to take his place, constitutes the parents actual dependents to such an extent as to bring them within the meaning of the statute." [Gregory v. Standard Oil Co. of Louisiana, supra.] In Freeman's Case, the deceased employee, a boy sixteen years of age, went to Boston and began going to high school, but upon finding tuition was charged him, found employment and went to work. On the second day of his employment he received injuries arising therefrom causing his

death. Before he went to Boston he had lived at home and had given his mother all his wages which were substantial in amount. His father was in poor health and unable to support his family of five children. The facts were that at the time of the employee's death he was at work for wages, which it was his avowed purpose to send her. The Supreme Court of Massachusetts held, under that state of facts that, "A simple expression of purpose to contribute to support, unaccompanied by any actual contribution after reasonable opportunity, would not constitute dependency. The case at bar, however, in substance and effect discloses injury to the employee before any opportunity had arisen to make contribution to the support of the dependent out of the wages of the particular service, and substantial contributions from the earnings of earlier work. Partial dependency may be found even though dependent might have subsisted without aid. [McMahon's Case, 229 Mass. 48, 118 N. E. 189.] The deceased was a minor; hence a duty rested upon him to turn his wages over to the parent entitled thereto, and a correlative right to receive such wages vested in the parent. . . . The finding of partial dependency by the mother cannot be pronounced erroneous in law." [123 N. E. l. c. 846.]

In another case the claimant was a widow about seventy-seven years of age and unable to work. For her sole support she had $300 or $400 deposited in a bank, drawing four per cent interest. Her son was a single man when injured, about forty years of age, having no other person dependent upon him. He had never contributed anything to her support, but about five months prior to the injury of which he died, he had written her a letter promising to come and live with her, but soon thereafter became ill and could not do so.

In passing upon this state of facts the Supreme Court of Nebraska held: "Defendants argue in their brief that 'the question of the right of the plaintiff to compensation must be determined by whether or not the deceased was actually contributing to her support. If he was not, she incurred no pecuniary loss by reason of his death, and consequently is entitled to no compensation. The plaintiff has not lost one iota of the support upon which she was dependent prior to Nels Parson's death.'

"Elsewhere in their brief, defendants concede that 'If, in the case at bar, Mrs. Parson had been living with her deceased son, and had been supported by him, there would be no question as to her right to compensation.'

"Defendants' argument on this point cannot be sustained. We believe the statute is susceptible of an interpretation that more nearly accords with the main purpose of its enactment. The act is one of general interest, not only to the workman and to his employer, but as well to the State, and it should be so construed that technical re-

finements of interpretation will not be permitted to defeat it. Among its objects are these: That the cost of the injury may be charged to the industry in which it occurs; the prevention of tedious and costly litigation; a speedy settlement between employer and employee; and to prevent dependent persons from becoming a public burden. To adopt defendants' argument would require us to announce a rule that is not warranted by the act, nor by common experience. It is not shown that the widow's son made any contributions to her support. But in any event this feature is not important, in view of our holding that the question of contribution, as it is contended for by defendants, is not controlling." [Parson v. Murphy (Neb.), 163 N. W. 847, L. R. A. 1918F, 479.] In 28 R. C. L. at page 779, it is said that "As to whether dependency may be found in respect of conditions that are to commence in future, the workman having contributed nothing in the past, the authorities are not in agreement. According to the more liberal view, it is not essential to prove actual contributions by the child in order to establish the dependency of the parent. The promise of the child, or the implication from the relations of the parties, may give rise to a reasonable expectation of future support and maintenance, just as effectively as past contributions."

We are pursuaded to adopt this view. The statute in the states from which the foregoing cases arose are similar to ours on the requirements as to "dependency" and the opinions of courts where the compensation law is not so new as in this State should carry great weight. "Dependency" is a general term, undefined by our law. A liberal interpretation should be taken by the courts and, in fact, is required by our statute. To hold that parents, after making sacrifices to educate their son, and prepare him for greater service, at the very time when they need his financial assistance and have reasonable expectation of material support from him shall be deprived thereof because of his untimely death before a pay day, would be to adopt a narrow construction of the statute, unwarranted by justice or reason. The son not only had promised this support but, under all the facts, owed a strong filial duty to give it. The parents were old, the farm heavily mortgaged, another son to be raised and educated, and the son Raymond with none other to support, were all facts which, together with his promise, created a condition existing at the time of his death from which a finding of partial dependency cannot be said to be unsupported by any substantial evidence.

Some courts have based their decisions in such cases in part, at least, upon the broad ground that, since prior to the enactment of the compensation law the parents had a cause of action for the death of the son, after being deprived of that right by law, upon humanitarian considerations a liberal view should be taken in passing upon the

question of dependency under such circumstances. Whether that reasoning is logical we are not called upon to decide. We do hold, however, that the mere fact that an employee has never contributed anything substantial to the support of his parents is not conclusive in deciding the question of dependency. Where facts and circumstances, existing at the time of the employee's death, indicate that he intended to assist his father and mother with the fruits of his labor, and that he had promised to do so, and they had the right, on account of their circumstances, to expect such aid as a filial duty, and where his unexpected and sudden death prevented him from having an opportunity to keep that promise or fulfill that duty, we cannot say as a matter of law the parents were not dependents.

Defendants cite a number of cases which they say hold a contrary view. Among them are such cases as Globe Grain & Milling Co. v. Industrial Com. (Utah), 193 Pac. 642; Alden Coal Co. v. Industrial Com., 293 Ill. 597, 127 N. E. 641; Hoffman v. Van Benthugsen, 185 N. Y. Sup. 639, and others of like import. The facts and statutes in all the cases cited are substantially different from those in the case at bar. We do not deem it necessary to prolong this opinion by a discussion of those cases. We hold there was at least some substantial evidence of partial dependency in this case at least sufficient to support the finding of the commission.

It is therefore our duty to leave that finding undisturbed. The judgment must accordingly be affirmed. It is so ordered. *Cox, P. J.*, and *Smith, J.*, concur.