LEONARD ASH, JR., BY ROBERT M. McKAY, CURATOR, CLAIMANT, RESPONDENT, v. MODERN SAND & GRAVEL COMPANY, EMPLOYER, AND AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, INSURER, AND NANCY ASH, APPELLANTS.—122 S. W. (2d) 45.

St. Louis Court of Appeals.   Opinion filed December 6, 1938.

Motion for rehearing overruled December 20, 1938.

*Luke & Cunliff* for appellants Modern Sand & Gravel Co. and American Mutual Liability Insurance Company.

*Hay & Flanagan* and *Robert W. Herr* for appellant Nancy Ash.

*Joseph T. Tate, Virginia B. Anding, James Booth* and *James L. Anding* for respondent.

HOSTETTER, P. J.—This is a case arising under the Workmen's Compensation Law. It reached this court by appeal of the employer, the insurer, and Nancy Ash, from the Circuit Court of Franklin County, which reversed and set aside a finding and an award made by the Workmen's Compensation Commission which denied compensation to the claimant, Leonard Ash, Jr., a boy seven years old.

The circuit court's findings were as follows:

"A. That the Commission acted without or in excess of its powers;

"B. That the facts found by the Commission do not support the award;

"C. That there was not sufficient competent evidence in the record to warrant the making of the award."

The award made while the claimant's case was pending before the Commission was first made by the Honorable Edward C. Lynch, Referee, on December 17, 1937, and on appeal of the claimant to the full Commission, that tribunal on the 27th of January, 1938, denied compensation to claimant as follows:

"We find from the evidence that the claimant was not actually dependent upon the wages of employee at the time of his injury, nor was there a reasonable probability that in the future the deceased would have contributed to the support of said claimant. Therefore, compensation must be and is hereby denied.

"Affirming on review award dated December 17, 1937."

The claim was filed before the Commission on August 18, 1937, by Ira Pitts, who was the mother of the seven-year-old claimant, and his natural guardian. Prior to the hearing of testimony by the Referee, Robert W. McKay, the duly appointed and acting curator of the minor claimant, was substituted in place of the mother.

Leonard Ash, the father of the minor claimant, was in the employ of the Missouri Sand & Gravel Company at Pacific, in Franklin County, and, on the 28th day of December, 1936, came to his immediate death by an accident arising out of and in the course of his employment, and both employer and employee having previously thereto elected to accept the provisions of the Workmen's Compensation Law, there was no dispute as to the case being properly cognizable by the Commission.

The employer and insurer in their joint answer to the claim of the

son of the deceased employee set out that Nancy Ash, the mother of said deceased employee, had, prior to the filing of the instant claim, filed her claim as a dependent and had been awarded $720 compensation as a partial dependent, which had been paid by the employer and insurer, and urged such matters as a final adjudication barring the consideration of the claim of said Leonard Ash, Jr. It was conceded, however, that the son of the deceased employee was not a party to the proceeding instituted by Nancy Ash.

The facts are substantially as follows:

Ira Ivey, a young girl eighteen years of age, left her home in Arkansas in March, 1929, with a party of friends and neighbors, and came to Pacific, Missouri. She worked as a domestic, shortly after her arrival, in the home of Nancy Ash and Green Ash, parents of Leonard Ash, receiving $3 per week for her services. She was married to Leonard Ash on May 14, 1929, and, on December 13, 1929, seven months after the marriage, Leonard Ash, Jr., was born. Shortly after the marriage, the parents had a disagreement, and the wife went back to her people in Arkansas, where the child was born. Shortly after the birth of the child the parents became reconciled, and, in the early spring of 1930 began living together, and continued to live together as a family in West Plains, Missouri; Hoxie, Arkansas; Bismarck, Missouri, and Pacific, Missouri, up until June, 1932, at which time they again had trouble and separated permanently. The mother there-after went to St. Louis and secured a position in a box factory. While in St. Louis the mother became ill, was taken to a hospital and her husband, Leonard Ash, the deceased employee, sent for the child, Leonard Ash, Jr., and had him brought to him at Pacific, Missouri, and the child lived there with his father and grandparents until the mother got well. After she got well and left the hospital, she went to Pacific to get the boy, but the father would not let her have him at that time and she thereafter made a second trip before she secured the child. After getting the child, she returned to St. Louis and stayed until May and then went to Arkansas to live, and was married to Edward Pitts at Mammoth, Arkansas in December, 1934, and was living with him at the time that Leonard Ash, the father of the claimant, met his death.

On March 17, 1934, Leonard Ash obtained a divorce from his wife in the Circuit Court of Franklin County, Missouri. The petition alleged that the wife was a non-resident of Missouri and service was obtained on her by an order of publication, and the divorce decree was by default. The petition for the divorce contained the following paragraph in relation to the minor claimant, viz.:

"Plaintiff further states that there was one child born of the aforesaid marriage, namely, Leonard Ash, Junior, age 4 years, and that when the plaintiff left defendant the 28th day of December, 1931, de-

fendant took said child with her and since that date has kept said child in her custody."

The decree made no reference to the minor child, Leonard Ash, Jr., or as to his custody or support.

Several witnesses who had intimately known Leonard Ash in his lifetime testified to statements made by him to the effect that he had at various times sent money to the support of the child while he (the child) lived in Arkansas with his mother. One of these witnesses was Rose Thomas who lived in Ferguson, Missouri, but who had formerly lived at Pacific for about six years and was engaged to be married to Leonard Ash at the time of his death. She had been acquainted with him for about three years and testified that in speaking of the child he had always referred to him as "my son," or "my baby," or "Junior, my baby." She also testified that these conversations with Leonard Ash were of frequent occurrence; that she did not commence going with him after he was divorced.

Objection was made to this testimony by counsel for the opposing parties on the ground that it was hearsay and self-serving statements. Thereupon counsel for claimant made an offer of proof to the effect that the witness would testify to the effect that she had had numerous conversations with Leonard Ash concerning future marriage, in which he told her that in the event they were married that he was going to Arkansas and get that child and bring it back to live with them as he intended to support it. Upon objection to this offer being made the referee sustained the objection.

Annie Jane Thomas, mother of Rose Thomas, testified to the same effect as her daughter. She also testified that a bundle was fixed up in her home to be sent by Leonard Ash to his son in Arkansas and that she advised him not to send it, that the other people would take the stuff and the child wouldn't get it; that he did not send it because he told her he was going to send money instead.

Ira Pitts, the mother of the claimant, testified that Leonard Ash sent money off and on all the time; that he sent greenbacks in letters to her sister; that the last time he sent money was the last Christmas when he sent $5; that at other times he would send smaller amounts, $2, $3; that she saw the letters and knew his handwriting and that they were in Leonard's handwriting.

Mrs. Pitts also testified that she and her mother and sister and her husband, Edwards Pitts, lived on a little old 40 acre farm at Mammoth Springs, Arkansas, and that when her husband was not on PWA where he received $1.50 per day, he worked on the farm and that the money that came in was used to support the family.

A great deal of useless testimony was given in the case on the question as to whether the claimant child was really the child of Leonard Ash. There was some testimony that when the eighteen-year-old Ira Ivey first came to Pacific that she was somewhat promiscuous with

men, but she denied these charges, and admitted, however, that she had had sexual intercourse with Leonard Ash, a month or so before the marriage, but denied having had sexual intercourse with anyone else. She testified that the child which was born seven months after the marriage with Leonard Ash weighed around four pounds at birth. There was no dispute that the child was born in wedlock and seven months after the marriage.

Section 3319, Revised Statutes of Missouri, 1929, subdivision d, Mo. Stat. Ann., sec. 3319, p. 8254, defines the word "dependent" as used in chapter 28, Revised Statutes of Missouri, 1929, to mean a relative by blood or marriage of a deceased employee who is actually dependent for support, in whole or in part, upon his wages at the time of the injury.

Subdivisions numbers 1 and 2 of said section 3319, Revised Statutes of Missouri, 1929, Mo. Stat. Ann., sec. 3319, p. 8256, read as follows:

"1. A wife upon a husband legally liable for her support, and a husband mentally or physically incapacitated from wage earning upon a wife. Provided that on the death or remarriage of a widow, the death benefit shall cease unless there be other dependents entitled to any unpaid remainder of such death benefit under this chapter.

"2. A natural, posthumous, or adopted child or children, whether legitimate or illegitimate, under the age of eighteen years, or over that age if physically or mentally incapacitated from wage earning, upon the parent with whom he is living at the time of the death of such parent, there being no surviving dependent parent or step-parent. In case there is more than one child thus dependent, the death benefit shall be divided among them in such proportion as may be determined by the commission after considering their ages and other facts bearing on such dependency. In all other cases questions of total or partial dependency shall be determined in accordance with the facts at the time of the injury, and in such other cases, if there is more than one person wholly dependent the death benefit shall be divided equally among them."

It is to be noted that the decree in the divorce suit of Leonard Ash v. Ira Ash made no adjudication in respect to the support or custody of the child. At the time of the rendition of the decree the child was living with its mother in Arkansas. It has always been the tendency of the courts to leave an infant with its mother rather than with its father.

The case of Kennedy v. Keller, 225 Mo. App. 561, 37 S. W. (2d) 452, presents a situation very similar to that in the instant case except in the Kennedy case the parents had been divorced and the wife was awarded the custody of the minor child. We quote with approval the following excerpt from the Kennedy case, supra;

"The word 'dependent' ordinarily means the need of aid or support; not self-sustaining. A dependent person is one who has not the means

of his own to support himself. A total dependent is one who has no means whatever to support himself. A partial dependent is one who has some means, but not sufficient for his support. The plaintiffs here were obviously totally dependent. They had no means of their own, and were utterly without earning capacity. That such dependency was actual—that is, real—there could hardly be the suggestion of a doubt. Upon whom then were they dependent? Being infants of tender years, they would ordinarily be presumed to be dependent upon their father, upon whom the law imposes the primary duty to support them. Their custody, however, had been awarded to their mother by the divorce decree, and they were receiving their support from their stepfather, but the duty to support them was not imposed upon their mother by the decree, but, on the contrary, was imposed thereby upon their father, so that he was bound to support them as a primary duty, not only by virtue of the law, but by virtue of the decree of the court as well. There can be no question that the support which they received from their stepfather was such as their father was legally bound to provide as a primary duty. If, after having been abandoned by their father, they had been supported by some charitably inclined stranger or neighbor, or by some charitable institution or by the State, would the courts hold that they were therefore not dependent upon their father for their support and not entitled, upon his death, to the death benefit provided by the statute? We cannot bring ourselves to believe that the Legislature so intended. Yet this is precisely what the defendants' construction of the statute leads to. Manifestly plaintiffs were, under the conceded facts, totally dependent for their support upon their father at the time of his death, within the meaning of the statute, and entitled to compensation on that basis. We think this view is supported by the authorities, but it is so obviously in accord with both the letter and spirit of the statute that the citation of authorities ought not be necessary. Nevertheless, see Panther Creek Mines v. Industrial Commission, 296 Ill. 565, 130 N. E. 321; Serrano v. Cudahy Packing Co., 194 Iowa, 689, 190 N. W. 132; McGarry v. Industrial Commission, 64 Utah, 592, 232 Pac. 1090, 39 A. L. R. 306; McGarry v. Industrial Commission, 63 Utah, 81, 222 Pac. 592; Industrial Commission v. Drake, 103 Ohio St. 628, 134 N. E. 465; Rohan Motor Co. v. Industrial Commission, 188 Wis. 223, 205 N. W. 930; Robinson v. Robinson, 268 Mo. 703, 186 S. W. 1032; Foote v. De Poy, 126 Iowa, 366, 102 N. W. 112, 68 L. R. A. 302, 106 Am. St. Rep. 365; Guthrie County v. Conrad, 133 Iowa, 171, 110 N. W. 454; Walters v. Niederstadt (Mo. App.), 194 S. W. 514; Kershner v. Kershner, 202 Mo. App. 238, 216 S. W. 547.

. . . . . .

"It will be observed that the statutes make the wife conclusively dependent upon a husband legally liable for her support, and puts it on the sole ground of such legal liability. It is inconceivable that the

statute makes the wife conclusively dependent upon her husband because he is legally liable for her support, though she lives separate from him, and though she may in fact have ample means, or ample earning capacity, to support herself, and yet intends that his infant children of tender years, who are shown to be wholly without the means, or the earning capacity, to support themselves, and are therefore in fact actually dependent, are not to be regarded as dependent upon him, though he alone is legally liable for their support, because, forsooth, he does not in fact support them, but leaves them to be supported by one who is in no way obligated to do so.''

In Borgmeier v. Jasper (Mo. App.), 67 S. W. (2d) 791, the facts were somewhat similar to the facts in the instant case. The claimant was a fifteen-year-old daughter of the employee at the time of his sustaining the injury which resulted in his death. She was born when her parents were living apart and when about one year old her parents became reconciled and lived together some few months when a second and final separation occurred. There was no divorce however, and the mother died when the daughter was about six years old. She never lived under the same roof with her father since the final separation and was supported entirely by her mother and her relatives. Her father's contributions were so negligible as not to be worthy of being taken into account. At the time of her father's death, when she was fifteen years old, she had no independent means of her own, nor had she ever earned anything on her own account. The radical difference between the two cases is that in the Borgmeier case the full commission awarded the daughter the full death benefit, putting its decision upon the ground that the daughter had had no independent means of support and that her deceased father had at all times been legally liable for her support. The circuit court affirmed this award of the commission and this court affirmed the ruling of the circuit court.

We must confess that we have no regard for, or sympathy with, a construction of the statutes which would deny a child of tender years the right to share in compensation growing out of the death of its father, simply because it was, at the time of his death, living separately with its mother, as in the instant case. Between warring parents the child has no control over its destiny. It has no voice in determining the question as to which one of its parents with whom it may live. Besides, such a construction of the statute ignores and nullifies the duty imposed by law on the father to support his minor children and condones and perpetuates his criminality growing out of his failure to support them while living. Statutes outside of those in the Workmen's Compensation Law makes rigid requirements on a father to support his minor children. Section 4026, Revised Statutes of Missouri, 1929, Mo. Stat. Ann., sec. 4026, p. 2830, makes the father criminally liable for the support of his minor child while it is under the age of sixteen years. The decisions of our courts emphasize his

duty and his liability for the support of his children during their minority. [McCloskey v. St. Louis Union Trust Co., 202 Mo. App. 28, 213 S. W. 538; Worthington v. Worthington, 212 Mo. App. 216, 253 S. W. 443; Winner v. Schucart, 202 Mo. App. 176, 215 S. W. 905; Dolvin v. Schimmel (Mo. App.), 284 S. W. 811; Kershner v. Kershner, 202 Mo. App. 238, 216 S. W. 547; Robinson v. Robinson, 268 Mo. 703, 1. c. 709, 186 S. W. 1032.]

Where the parents are divorced and the divorce decree is silent as to the custody and maintenance of the child (as in the instant case) the father's obligation is unchanged in respect to his minor children. [Shannon v. Shannon, 97 Mo. App. 119, 71 S. W. 104; Viertel v. Viertel, 212 Mo. 562, 1. c. 576, 111 S. W. 579; Rankin v. Rankin, 83 Mo. App. 335; 19 C. J., p. 353.]

Where other persons furnish such support they may sue and recover therefor from the father. [Kelly v. Kelly (Mo. App.), 11 S. W. (2d) 1107.]

The seven-year-old claimant in the instant case was obviously totally dependent. He had no means of his own and was utterly without earning capacity. Such dependency was actual, that is, real, and rested on the father. [Kennedy v. Keller, 225 Mo. App. 561, 37 S. W. (2d) 452; Borgmeier v. Jasper (Mo. App.), 67 S. W. (2d) 791; Cunningham v. Management & Engineering Corp., 226 Mo. App. 215, 45 S. W. (2d) 899.]

In Phillips v. Air Reduction Sales Co., 337 Mo. 587, 85 S. W. (2d) 551, 1. c. 556, our Supreme Court, in discussing cases of minor children who were not living with their fathers upon whom they claimed to be dependents, used this language, viz.:

"Under these circumstances, the matter of legal liability for their support is held to be essential in determining whether they are entitled to an award of compensation as dependents."

It satisfied the requirements of due proof of dependency to show that there was some reasonable probability that the deceased father's legal duty would thereafter have been fulfilled by him. [Borgmeier v. Jasper (Mo. App.), 67 S. W. (2d) 791; Kennedy v. Keller, 225 Mo. App. 561, 37 S. W. (2d) 452.]

The undisputed evidence shows that the father of the minor claimant contributed regularly to his child's support. Part of the time he had the child with him in Pacific, and, after he and his wife separated, and while she and the child were still living in Pacific, he visited them, and took packages to them. He held the child on his lap, kissed it, treated it kindly and showed so much love for it that he refused to give it up to its mother when she came for it in 1932. After the mother took the child to Arkansas, Leonard Ash made regular monthly cash contributions of from three to five dollars to the support of the child, right up to the time of his death. A part of this money was used to purchase the child's clothing. On Christmas of 1936, just three days

before his death he sent the child five dollars in cash in a letter. The deceased employee, as the father of the child, kept in close contact with his former wife's sister, an aunt of his child, and made regular inquiries as to the welfare of the child.

The only witness that the appellants offered to attempt to show that Leonard Ash did not contribute to the support of his child, the minor claimant, was Nancy Ash, the mother of the deceased, who was awarded compensation as a partial dependent, in a prior. proceeding, and who naturally is interested in the outcome of this case, and yet, it is to be noted that she says that Leonard kept the child at her home in Pacific while the mother was in the hospital in St. Louis in 1932; that the family all called the child Junior; that she saw Leonard nursing the child and holding him on his lap, and that Leonard had a right to do that as he was taking care of him; that Leonard and his wife visited in her home and brought the child with them. In addition to being a rival claimant, her testimony only tended to prove a negative covering several years, and, therefore, we do not regard it as substantial, and competent testimony to support the award of the Commission.

Nowhere in the testimony offered by the appellants can be found a definite statement to the effect that the deceased employee did not contribute to the support of the minor child, the claimant in this case, but on the contrary, there is an abundance of undisputed testimony that he did.

In the hearing before the referee the proceedings and testimony previously taken in the case of Nancy Ash versus the employer and insurer was put in evidence as against the claimant Leonard Ash, Jr., over objection, which we hold was error, as Leonard Ash, Jr., was not a party to such proceedings and, therefore, was not bound by the findings based thereon. He had no opportunity to cross examine witnesses or to produce witnesses in his own behalf in such proceedings in the Nancy Ash case. The record in the Nancy Ash case can only bind those who are parties thereto. [Womach v. St. Joseph, 201 Mo. 467, 100 S. W. 443, 10 L. R. A. (N. S.) 140; Smith v. Kiel (Mo. App.), 115 S. W. (2d) 38.]

The strenuous efforts made to bastardize the boy claimant, we think signally failed as it deserved to fail. The Commission failed to make a finding on this issue. Every child born in wedlock is presumed to be legitimate. Public policy sanctions this view. [Bower v. Graham, 285 Mo. 151, 225 S. W. 347; Gates v. Seibert, 157 Mo. 254, 1. c. 272, 57 S. W. 1065, 80 Am. St. Rep. 625; Busby v. Self, 284 Mo. 206, 223 S. W. 729.]

Such presumption in favor of the legitimacy of children born in wedlock is the strongest known to the law, and the courts in their righteous zeal to protect the innocent offspring will not permit this presumption to be overthrown unless there is no judicial escape from such a malign conclusion. [Nelson v. Jones, 245 Mo. 579, 151 S. W. 80; Maier v. Brock, 222 Mo. 74, 1. c. 100, 120 S. W. 1167, 133 Am. St.

Rep. 513; Jackson v. Phalen, 237 Mo. 142, 140 S. W. 879; Stripe v. Meffert, 287 Mo. 366, 229 S. W. 762; 7 C. J., par. 6, p. 940.]

To overthrow this presumption the evidence must show conclusively that the husband, by reason of absence or otherwise, could not have had sexual intercourse with the wife at the beginning of any reasonable period of gestation. [Drake v. Milton Hospital Ass'n, 266 Mo. 1, 178 S. W. 462.] But the husband himself set the question of the legitimacy of the child at rest, when he acknowledged under oath in his divorce petition filed in 1934, that "there was one child born of the aforesaid marriage, namely, Leonard Ash, Junior, age 4 years."

We agree with the conclusions reached by the learned trial judge and the judgment of the circuit court is accordingly affirmed. *Becker* and *McCullen, JJ.*, concur.