In re in the Interest of K_____ W_____ H_____, a Minor.

No. 34111.

Missouri Court of Appeals, St. Louis District.

Jan. 25, 1972.

Motion for Rehearing or for Transfer to Supreme Court Denied Feb. 29, 1972.

Steiner, Fenlon & Harper, Jerome M. Steiner, Joseph A. Fenlon, Jack C. Harper, Clayton, for appellant.

Lawrence O. Willbrand, St. Louis, for respondent.

DOERNER, Commissioner.

This appeal had its origin in a petition filed by the juvenile officer in the juvenile court of St. Louis County concerning K____ W____ H____, a minor male child. The court entered an order taking jurisdiction of the child, giving legal custody of him to St. Louis County Welfare Services, and awarding his physical custody to D____ H____, the alleged father of K____ W____ H____. Thereafter the child's mother, who was named R____ C____ and was married to J____ C____ both at the time of conception and of his birth, but subsequently obtained a divorce and married M____ L____ H____, filed a motion to set aside the court's order and to re-transfer custody of the child to her. The juvenile court overruled the motion, reaffirmed its original order, and found that D____ H____ was "the natural and legal father of said child, K____ W____ H____." From that order R____ H____, the mother, appealed.

The transcript before us reveals that the juvenile officer was authorized on November 1, 1968, to file his petition, and did so on that day. In it he alleged that the minor had been born on September 14, 1968, and was without proper care, custody and treatment. Summons were issued to R____ C____, the mother, and to J____ C____, her husband, who were living apart, and to D____ H____, the putative father.

The transcript shows that non est returns were made by the respective sheriffs

on both the summons issued to the mother and that issued to J———— C————. However, the next entry in the transcript is the "Commissioner's Memorandum of Appearances," in which he noted that the mother, her mother (Mrs. T———— S————), and the putative father appeared before the commissioner on January 24, 1969, the date stated in the summons to the mother directing her to appear.

Immediately following the Commissioner's Memorandum of Appearances in the transcript is the "Findings and Recommendations of the Commissioner," dated January 24, 1969. These findings and recommendations appear to have been made on a printed form, in which the commissioner apparently indicated those provisions of the form which he believed were applicable by placing an X opposite the printed text. For example, the first finding, designated "A" appears in the transcript as follows:

"X   A.   The allegations of the petition are true."

Similarly, under the part of the form headed "Recommendations," that part of the printed text checked appears as follows:

"X   C.   That the Court take jurisdiction over the child and that

\*       \*       \*       \*       \*       \*

X   3.   Physical custody of the child be placed with D———— H———— subject to legal custody and supervision by St. Louis County Child Welfare Services."

Apparently also printed in the form, after the foregoing, is the following provision, above the signature of the commissioner:

"NOTICE OF RIGHT TO
REHEARING

" 'The minor and his parents, guardian or custodian are entitled to a hearing by a Judge of the Juvenile Court if within 10 days after receiving notice of the findings of the Commissioner they file a request with the Court for a hearing. The Court shall allow such hearing at any time. In case no hearing before the Judge is requested, the findings and recommendations of the Commissioner shall become the decree of the Court when adopted and confirmed by an order of the Judge (Sec. 211.029, Mo.Rev.Stat.)."

And at the end of this form, following the Commissioner's signature, there appears the following printed order, signed and dated:

" 'ORDER

" 'The findings and recommendations of the Commissioner are adopted and confirmed.

| 1–27–69 | /s/ Noah Weinstein |
|---|---|
| (Date) | Judge" |

The next entry in the transcript is an order of the juvenile judge, dated January 24, 1969, in which he authorized service of notice of the findings of the commissioner, together with a statement relative to the right of rehearing, to be served upon the minor, parents, guardian or custodian of the minor by United States first class mail. Following that entry in the transcript there next appears the following:

" 'CERTIFICATION OF NOTICE'

" 'I certify that notice of the findings of the Commissioner together with a statement relative to the right of rehearing was given to the following persons:

at the hearing.   1 cert. to D————H————
1 copy to CWS

| /s/ R. J. O'Hanlon | MO |
|---|---|
| Commissioner | Clerk |

(FILED—January 24, 1969)"

The entry in the transcript appearing after the Certification of Notice is as follows:

"'MINUTES OF PROCEEDINGS'

"'Cause heard and submitted. Findings and Recommendations of Commissioner as adopted and confirmed by the Judge together with Certification of Notice filed.

By Robert J. O'Hanlon, Comm.

"'Apprv. by Noah Weinstein, Judge' (DATED—January 24, 1969)"

On June 12, 1970, the mother filed her motion, titled "Motion to Set Aside Order of January 24, 1969 and to Retransfer Custody." It is apparent that the order to which the motion is directed is the court's order of January 27, 1969, adopting and confirming the commissioner's findings and recommendations. A hearing of the mother's motion was held, and on December 30, 1970, as stated, the court overruled the mother's motion, confirmed its original order of January 27, 1969, and found that D____ H____ was the natural and legal father of the minor.

■ As the first point in her brief the mother asserts that the trial court erred in declaring the child to be illegitimate. We agree. Even if the evidence is viewed in the light most favorable to support the court's decision, all it shows, at best, is that the mother had sexual relations with both her husband and with D____ H____ in December 1967, the month in which it appears likely that conception occurred. (Actually, the mother testified that she never had relations in that month with D____ H____, and had them only with her husband, after her period in that month). The mother was still married to, but living apart from, J____ C____ at the time the child was born, on September 14, 1968. The law presumes that children born in wedlock to be legitimate. Jackson v. Phalen, 237 Mo. 142, 140 S.W. 879; Nelson v. Jones, 245 Mo. 579, 151 S.W. 80.

That presumption is the strongest known to the law. Bernheimer v. First Nat. Bank of Kansas City, 359 Mo. 1119, 225 S.W.2d 745; Ash v. Modern Sand & Gravel Co., 234 Mo.App. 1195, 122 S.W.2d 45. And while the presumption is no longer conclusive but may be rebutted, Boudinier v. Boudinier, 240 Mo.App. 278, 203 S.W.2d 89; Ash, supra, as we said in F____ v. F____, Mo.App., 333 S.W.2d 320, 327: "* * * But the burden of proof is on the party asserting the illegitimacy, Jackson v. Phalen, supra. And the burden is indeed an onerous one, for the quantum of evidence necessary to overcome the presumption must be not only clear and convincing, Stripe by Shannon v. Meffert, 287 Mo. 366, 229 S.W. 762, but it must be such that no conclusion other than that of illegitimacy can be reached. Nelson v. Jones, supra; Ash v. Modern Sand & Gravel Co., supra." The evidence in this case fell far short of overcoming the presumption of legitimacy.

■ In her second point the mother asserts that the court erred in making its order of January 27, 1969 for the reason that she was not afforded due process in the procedure leading up to that order. We agree that the juvenile court erred in making its order of January 27, 1969, but prefer to rest our decision on what we consider a more fundamental and jurisdictional ground.

In 1967 the General Assembly enacted an act relating to juvenile courts in counties of the first class and the city of St. Louis, which act authorized the appointment of juvenile court commissioners by a majority of the circuit court judges, en banc, of the county. Laws 1967, p. 332, now numbered §§ 211.023 to 211.029, RSMo 1969, V.A.M.S. Supp. Section 211.025 provides that the judge of the juvenile court may direct that any case shall be heard in the first instance by the commissioner in the manner provided for the hearing of cases by the court. Section 211.027 states that upon the conclusion of the hearing the commissioner

shall transmit to the judge all papers relating to the case, together with his findings and recommendations in writing. The same section continues:

"* * * Notice of the findings of the commissioner, together with a statement relative to the right of rehearing, shall be given to the minor, parents, guardian or custodian of the minor whose case has been heard by the commissioner, and to any other person that the court may direct. This notice may be given at the hearing, or by certified mail or other service directed by the court."

And the last statute, Section 211.029 reads:

"The minor and his parents, guardian or custodian are entitled to a hearing by a judge of the juvenile court if within ten days after receiving notice of the findings of the commissioner they file a request with the court for a hearing. The court shall allow such hearing at any time. In case no hearing before the judge is requested, the findings and recommendations of the commissioner shall become the decree of the court when adopted and confirmed by an order of the judge. The final order of the court shall, in any event, be proof of such adoption and confirmation and also of the fact that the matter was duly referred to the commissioner. Laws 1967, p. 332, § 4."

The transcript before us fails to show that notice of the findings and recommendations of the commissioner made on January 24, 1969, together with a statement relative to the right of rehearing by the court, was ever given to the mother. On the contrary, as we view the record, it affirmatively shows that such notice and statement was not given to the mother. The court on January 24, 1969, had authorized the service of the findings and statement by United States first class mail. But the certification of notice filed by the commissioner on the same day, heretofore

quoted in full, shows only that the findings and statement were served "at the hearing" on "1 cert. to D____ H____" (the putative father) and "1 copy to CWS," which initials we surmise mean the Child Welfare Service. No other proof of service is shown. The fact that the commissioner specifically named others in the certification who were served, but did not name, R____ C____, the mother, as having been served, supports the conclusion that no notice of the findings and of the required statement were ever served upon her.

The importance of the failure to serve the mother with notice of the commissioner's findings and a statement of her right to a hearing by the court is critical, in view of § 211.029. That section makes it mandatory upon the court to allow a hearing if a parent files a request for one "* * * within ten days after receiving notice of the findings of the commissioner * * *." Of course, if no service of notice of the commissioner's findings and of the required statement was ever served on the mother, as the transcript here indicates, then the ten day period mentioned in the statute never began to run and the court's order adopting and confirming the findings and recommendations of the commissioner's was a nullity.

Furthermore, the record in the instant case shows that the juvenile court did not even wait until the expiration of ten days before entering its order of adoption and confirmation. As stated, the commissioner made his findings on January 24, 1969, and the court entered its order adopting and confirming the commissioner's findings and recommendations on January 27, 1969, only three days thereafter. Hence, even if proper service of the notice of the commissioner's findings and the statement had been served on the mother in the instant case the court's order adopting and confirming the commissioner's findings and recommendations would nevertheless be a nullity.

For by Section 211.029 a parent is given ten days from receipt of such notice within which to file a request for a hearing by the court, and absent a waiver the court is without authority to foreclose a parent from filing such a request, and to make a final order, prior to the expiration of the statutory period.

While a circuit court is a court of general jurisdiction, a juvenile court is a tribunal of limited jurisdiction, whose " * * * powers are confined strictly to the authority given by statute. * * *" State v. Taylor, Mo.App., 323 S.W.2d 534, 537. See also State ex rel. Dew v. Trimble, 306 Mo. 657, 269 S.W. 617; State v. Couch, Mo.App., 294 S.W.2d 636; and Ex parte Parsons, Mo.App., 232 S.W. 740. And while the juvenile court was created specifically to help children, nevertheless, as said in Couch (l.c. 639), it is " * * * equally charged with the obligation to safeguard the legal and constitutional rights of the child and its parents, * * *."

For the reasons stated we hold that the court's order of January 27, 1969, adopting and confirming the commissioner's findings and recommendations was a nullity; and that the court erred in entering its order of December 30, 1970, in which it overruled the mother's motion to set aside the Court's order of January 27, 1969.

Accordingly, the judgment is reversed and the case is remanded to the juvenile court for further proceedings not inconsistent with our opinion.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment reversed and cause remanded to juvenile court with directions.

BRADY, P. J., DOWD, J., and ROBERT CAMPBELL, Special Judge, concur.